**In re the MARRIAGE OF Patricia J. NUSSBECK, Petitioner,**

**and**

**Robert J. Nussbeck, Respondent.**

No. 97SC540.

Supreme Court of Colorado,
En Banc.

March 1, 1999.

McGuane and Hogan, LLP, Frank L. McGuane, Jr., Denver, Colorado, Attorneys for Petitioner.

Thomas H. May, Denver, Colorado, Themia E. Sandven, Denver, Colorado, Attorneys for Respondent.

Justice SCOTT delivered the Opinion of the Court.

We granted certiorari in this dissolution of marriage case to decide whether a trial court may enforce its order requiring payment of maintenance and child support through contempt proceedings after a money judgment has been entered on amounts not paid.[1] The court of appeals held that it could not and reversed the trial court's punitive contempt order reasoning that "[t]he entry of a judg-

---

1. Patricia J. Nussbeck petitioned this court seeking certiorari and raised the following issues for our review:

1) Whether the court of appeals erred in concluding and ordering that Husband could not be found in contempt of court and be subjected to punitive sanctions for failure to pay child support and maintenance arrearages which had been reduced to written judgment.

2) Whether this court should overrule the rule announced in *In re Marriage of Woodrum,* 618 P.2d 732 (Colo.App.1980) that remedial contempt for nonpayment of child support or maintenance may not be pursued once written judgment for child support or maintenance arrearages is obtained.

ment at law and the prosecution of a ... contempt citation are alternative, not duplicative, remedies." *In re Marriage of Nussbeck*, 949 P.2d 73, 77 (Colo.App.1997). We review the judgment of the court of appeals because of the importance of the issues raised to our trial judges, and now reverse.

## I.

### A.

This matter in dispute arose out of a lengthy dissolution proceeding between Patricia J. Nussbeck (wife) and Robert J. Nussbeck (husband). After agreeing that their marriage of approximately nineteen years was "irretrievably broken," wife and husband filed a joint-stipulation to temporary orders regarding custody of their daughter and amounts to be paid by husband for child support and maintenance.

On May 4, 1987, the stipulation, executed by wife, husband, and their attorneys, was filed with the trial court. Under the stipulation, it was agreed that the parties were to have joint custody of their minor daughter, that wife and the minor daughter were to have use of the family home, and that husband would continue to make monthly mortgage payments. It is undisputed that the stipulation became temporary orders of the trial court (temporary orders). By the temporary orders, husband was to pay temporary maintenance and child support to wife in the amount of $330 per month.

When husband failed to make payments contemplated by the temporary orders, wife filed her "Verified Motion for Judgment for Family Support." On October 10, 1990, the trial court entered a judgment against husband (the 1990 Judgment) for amounts due in accordance with the temporary orders. The 1990 Judgment was in the amount of $13,200, plus interest.

Several months later, the trial court entered its order and decree of dissolution, dissolving the Nussbecks' marriage. However, due to pending bankruptcy proceedings in federal court and related complications involving finances, the court deferred issuing its permanent orders regarding the division of property, maintenance, payment of debts, and attorney fees until a later date.

On May 17, 1994, the trial court entered permanent orders (the 1994 Permanent Order). Under the 1994 Permanent Order, the trial court entered findings that husband had "refused to pay child support and maintenance" under the 1990 Judgment, "together with interest totaling $19,114.53." The trial court also found that husband owed additional arrearages that accumulated after the 1990 Judgment until May 1993, totaling $11,-753.24. The 1994 Permanent Order directed the husband to pay the $11,753.24 "on a forthwith basis."[2] However, while husband made some payments, he failed to make all the payments under the temporary orders as set forth in the 1990 Judgment and the 1994 Permanent Order.

In July 1995, about 15 months after the 1994 Permanent Order, wife filed two motions seeking to have husband held in contempt. In one motion, wife sought remedial sanctions based upon husband's refusal to pay sums due under the 1994 Permanent Order for the arrearages that had accumulated after the 1990 Judgment. The trial court granted this motion, ruling that husband's action of refusing to pay "forthwith" the $11,-753.24 was a sufficient basis to hold him in contempt. This remedial contempt ruling, however, is not at issue before us.

Under the other motion, Verified Motion for Punitive Contempt Citation, wife sought punitive sanctions and attorney fees for amounts not paid pursuant to the temporary orders and set forth under the 1990 Judgment. Wife's punitive contempt motion was based upon the trial court's earlier finding that husband *"refused to pay child support"* (emphasis added) and that husband acted in "willful violation of existing orders of the court" concerning the 1990 Judgment.

On November 21, 1995, after a hearing before a magistrate, husband was found guilty of contempt under both motions. Un-

---

**2.** The trial court also found that husband had sold a ring that was the personal property of wife, and it directed husband to pay wife the sum of $8000, representing the ring's market value, within 60 days.

der the punitive contempt motion, the magistrate found that "orders ... were entered," and that the "orders were known to [husband]." Taking notice of the court's own file, the magistrate further ruled "that these orders for child support are judgments when they are not paid. And there was nonpayment." The magistrate found that husband "had ample opportunity to follow through with the orders of the court," and that husband's "attempts are and have been to dodge the order, to not pay, to make it difficult for the [wife] to collect child support."

In light of these findings, the magistrate concluded that a "punitive sanction is appropriate." As a consequence, husband was sentenced to "ninety days straight jail time ... to vindicate the dignity ... of the Court for [husband's] continual obstruction of the order of the Court, nonpayment of child support, and nonpayment of maintenance ... and [a] previous contempt that was entered when you were ordered to pay, and wherein the Court made findings of, essentially, the same findings that are being made today, trying to dodge your responsibility, costing the Court additional time and effort by your efforts."[3]

### B.

Husband filed a motion asking the district court judge to review the magistrate's ruling. On January 5, 1996, the district court judge denied the husband's motion for review, concluding "that the orders of the Magistrate were in accordance with the law and sufficiently supported by the evidence."

Husband next appealed to the court of appeals. The court of appeals affirmed the remedial order but reversed the punitive contempt order. *See Nussbeck*, 949 P.2d at 77. The court of appeals concluded that the magistrate's findings, upheld by the district court judge, in effect, found husband's ability to pay was "related solely to the arrearages accruing since the entry of the 1990 judgment and not to any arrearages upon which [the 1990] judgment was based." *Id.* at 75. The court of appeals further concluded that the wife's punitive contempt motion was

"based solely upon ... [husband's] failure to pay the October 1990 judgment" and was not based on his violation of "some other court order." *Id.* at 76. Therefore, the court of appeals held that failure to pay a money judgment cannot provide the basis for contempt, and that the "resulting order of [punitive] contempt and the punitive sanctions imposed ... must be reversed." *Id.* at 77. Relying upon *In re Marriage of Woodrum*, 618 P.2d 732 (Colo.App.1980), the court of appeals reversed the trial court's ruling, holding that "[t]he entry of a judgment at law and the prosecution of a ... contempt citation are alternative, not duplicative, remedies." *Id.* at 76.

We granted certiorari due to the importance of the court of appeals' holding, potentially limiting the ability of trial courts to enforce orders that result in a judgment in dissolution proceedings. We now reverse.

### II.

For purposes of punitive contempt proceedings, a movant must allege and a trial court must find the following: (1) the existence of a lawful order of the court; (2) contemnor's knowledge of the order; (3) contemnor's ability to comply with the order; and (4) contemnor's willful refusal to comply with the order. Before beginning our analysis, we first state certain legal principles that guide our deliberations.

### A.

A trial court that acquires jurisdiction in dissolution proceedings has the authority to impose contempt sanctions to enforce obedience of its orders. *See Shapiro v. Shapiro*, 115 Colo. 501, 504, 175 P.2d 387, 389 (1946). Even after entering a decree of dissolution, the court has continuing jurisdiction to enforce its orders, including those directing payments for support of a child and temporary maintenance. *See Gonzales v. District Court*, 629 P.2d 1074, 1075 (Colo. 1981).

---

**3.** Husband was forced to pay $5,200 through involuntary garnishment which the trial court

stated "goes to the issue of wilfulness [sic] or wantonness and ability to pay."

"The usual method of enforcing an order in a divorce action ... is by means of commitment for contempt of court after notice to the husband and a demand for payment." *Harvey v. Harvey*, 153 Colo. 15, 17–18, 384 P.2d 265, 266 (1963). "Contempt proceedings are equally available in enforcing a judgment which determines the property rights of the parties in a divorce proceeding." *Id.*

C.R.C.P. 107 provides the authority pursuant to which trial courts are to conduct remedial and punitive contempt proceedings. *See* C.R.C.P. 107. Rule 107 defines contempt as "[d]isorderly or disruptive behavior ... toward the court, or ... disobedience ... by any person to ... any lawful ... order of the court." C.R.C.P. 107(a)(1). Under Rule 107 there are two types of contempt: "direct" and "indirect." "Direct contempt" arises from only extreme or persistent in-court conduct that disrupts court proceedings and which requires a judge to impose order. *See* C.R.C.P. 107(a)(2). Direct contempt may be punished summarily, and a court need only make simple factual findings to support its ruling that a person is guilty of contempt. *See* C.R.C.P. 107(a)(2) and 107(b); *see also In re Marriage of Johnson*, 939 P.2d 479, 481–82 (Colo.App.1997). "Indirect" contempt is contempt that "occurs out of the direct sight or hearing of the court." C.R.C.P. 107(a)(3).

Rule 107 also sets forth two types of sanctions which the trial court can impose: punitive and remedial. *See* C.R.C.P. 107(a)(4) and (a)(5). Remedial sanctions for contempt are "[s]anctions imposed to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform." C.R.C.P. 107(a)(5); *see also Harvey*, 153 Colo. at 17–18, 384 P.2d at 266 (quoting 17 Am.Jur. *Divorce and Separation*, §§ 794, 796) ("Where a party is guilty of willful disobedience, or obstinacy to an order of the court, the court is empowered to punish for contempt and sentence [the offending person] to imprisonment until the specified sum or costs are paid."). A person guilty of contempt, therefore, "may be imprisoned until ... performance" of the act. C.R.C.P. 107(a)(5); *Murley v. Murley*, 124 Colo. 581, 584, 239 P.2d 706, 708 (1951). C.R.C.P. 107(d)(2) provides that remedial contempt applies only to those who have an ability to pay but refuse to do so. Before imposing remedial contempt the court is required to find "a present ability to pay." C.R.C.P. 107(d)(2).

Punitive sanctions for contempt are sanctions imposed to punish "by unconditional fine, fixed sentence of imprisonment, or both, for conduct that is found to be offensive to the authority and dignity of the court." C.R.C.P. 107(a)(4). The fixed penalties imposed for punitive contempt make it clear that a contemnor imprisoned after being adjudged to be in punitive contempt is not imprisoned for a debt, which would violate Article II, section 12, of the Colorado Constitution,[4] but, instead, is punished for violating a court order by failing to pay amounts due at a time when the contemnor had the ability to pay. *See Harvey*, 153 Colo. at 18, 384 P.2d at 266. Unlike remedial contempt, which the contemnor may purge by complying with the court order in question, punitive contempt cannot be so purged. Rather, the punishment imposed must be served by the contemnor because he or she has been convicted of a willful violation of a court order. Colorado courts have long held that Article II of our constitution does not prohibit punishment of contempt for refusing to obey lawful orders or decrees one has the ability to meet. *See In re Popejoy*, 26 Colo. 32, 36, 55 P. 1083, 1085 (1899). Imprisonment of husband for contempt in refusing to obey the lawful orders of a court " 'is not imprisonment for a debt, but [for the] refusal to obey the lawful order of the court ... represented by the judgment in favor of his wife.' " *Harvey*, 153 Colo. at 18, 384 P.2d at 266 (quoting *Popejoy*, 26 Colo. at 37, 55 P. at

---

4. Article II, section 12, of the Colorado Constitution provides "no person shall be imprisoned for debt, unless upon refusal to deliver up his estate for the benefit of his creditors in such manner as shall be prescribed by law, or in cases ... where there is a strong presumption of fraud." Colo. Const. art. II, § 12.

1085); *see also Usery v. Fisher*, 565 F.2d 137 (10th Cir.1977).

By its nature, certain procedural requirements must be met before a court can impose punitive sanctions. When it appears to the court, on motion supported by affidavit that indirect contempt has been committed, the court may issue a citation naming the person so charged requiring his appearance to show cause why he should not be punished. *See* C.R.C.P. 107(c). In an indirect punitive contempt proceeding, the court may impose a fine, imprisonment, or both if the court expressly finds that the person's conduct was offensive to the authority and dignity of the court. The contemnor has the right to make a statement in mitigation prior to the imposition of sentence. *See* C.R.C.P. 107(d)(1).

### B.

▮ A remedial contempt order exists primarily to enforce obedience to a trial court's order. Therefore, any payments or proceeds resulting from remedial contempt are payable to the person injured by the disobedience to a court's order. *See In re Marriage of Herrera*, 772 P.2d 676, 679 (Colo.App.1989). On the other hand, a punitive contempt order, intended to vindicate and uphold the dignity of the court, is not designed to benefit the interests of a third party; instead, its purpose is to punish the offending party for refusal to obey lawful orders. *See Harvey*, 153 Colo. at 18, 384 P.2d at 266. Plainly and simply, a punitive contempt proceeding is a matter between the court and the offending party. *See id.*

▮ A person who "willfully" violates an order of a court acts voluntarily, knowingly, and with conscious regard for the consequences of his conduct, refusing to comply with court orders when one has the ability to do so. *See Schnier v. District Court*, 696 P.2d 264, 268 (Colo.1985) ("Disobedience or resistance of any lawful writ, process, order, rule, decree, or command" of a court constitutes contempt).

▮ Because a punitive contempt proceeding is, as the name suggests, punitive, a person subject to such proceedings must be given notice of the offending conduct, the likely consequences, and the right to a hearing. *See Dooley v. District Court*, 811 P.2d 809, 811 (Colo.1991). That notice is sufficient, however, where the verified motion or affidavit sets forth the potential sanction of fine or imprisonment. *See id.*

### C.

Set against C.R.C.P. 107 and relevant precedent, we must consider section 14–10–122(1)(c), 5 C.R.S. (1998). Section 14–10–122(1)(c) provides that: "[I]n any action or proceeding in any court of this state in which child support, maintenance when combined with child support, or maintenance is ordered, a payment becomes a final money judgment ... when it is due and not paid." § 14–10–122(1)(c), 5 C.R.S. (1998).

▮ By operation of law, therefore, when any court-ordered installment of child support is due and unpaid, it automatically becomes a "final money judgment," similar to any other judgment for money, without further resort to the trial court. *See* § 14–10–122(1)(c); *In re Marriage of Jacobs*, 859 P.2d 914, 915 (Colo.App.1993); *Burke v. Burke*, 127 Colo. 257, 261, 255 P.2d 740, 742 (1953). Moreover, under section 14–10–122, the "judgment is entitled to full faith and credit and may be enforced in any court of this state or any other state." § 14–10–122(1)(c).

"In order to enforce a support judgment, the obligee shall file with the court that issued the order a verified entry of support judgment specifying the period of time that the support judgment covers and the total amount of the support judgment for that period." § 14–10–122(1)(c). The statute contemplates enforcement of the support judgment before the court that issued the support order. The statute is silent as to other means of enforcement, such as contempt proceedings. The statute does provide, however, for an expedited procedure for enforcement of a support judgment. *See id.*

### III.

We now apply the above law to the facts of this case, giving due deference to the findings of the magistrate and trial court below.

*See People v. Hampton,* 758 P.2d 1344, 1348 (Colo.1988) (a trial court's factual findings are entitled to deference by a reviewing court and will not be overturned if supported by competent evidence in the record).

### A.

■ Wife argues that the issue in the contempt proceeding was husband's failure to comply with prior orders of the court, contending in particular that she sought enforcement of the temporary orders directing the payment of $330 per month in maintenance and child support, and not merely to execute upon the 1990 Judgment. Therefore, wife claims, the fact that a written judgment was entered for amounts due and not paid under the temporary orders and the 1990 Judgment entered by operation of law pursuant to section 14–10–122, should not bar punitive contempt proceedings against husband. We agree.

In the record below and before us, husband does not dispute the entry of the 1987 order, the temporary orders, directing payments of $330 per month for maintenance and child support. The 1990 Judgment was rendered *after* the entry of the temporary orders directing husband to pay the very amounts the magistrate found husband "attempt[ed] ... to dodge." The amounts not paid under the temporary orders later became the basis for the 1990 Judgment in the amount of $13,200, which judgment husband did not appeal. Fifteen months later, after the payments for support and maintenance remained unpaid, wife filed her motion for contempt. We conclude that the temporary orders, even though the basis for a judgment by operation of law, *see* § 14–10–122, continue to provide a sufficient predicate for a contempt citation.

In accordance with section 14–10–122(1)(c), the trial court's temporary orders became a judgment when due and not paid. Any such judgments, rendered automatically upon each date a payment is due and is not paid, are rendered by force of statute upon amounts required by the temporary orders, which directed husband to faithfully make monthly maintenance and child support payments. *See* § 14–10–122(1)(c). While the 1990 Judg-

ment, entered by the court or under section 14–10–122, was correctly characterized by the court of appeals as a "declaration that one party is indebted to another in a specified amount," *Nussbeck,* 949 P.2d at 76, further characterization of the judgment to, in effect, obliterate the temporary orders does not, in our view, do full justice to the trial court's orders underlying the judgment. It is those orders, the temporary orders, entered in 1987 which continued in effect beyond the date judgment was entered, not the 1990 Judgment, which was the predicate for the punitive contempt proceedings and the judgment of contempt now under review.

Husband counters that, consistent with the Colorado Constitution's prohibition against imprisonment for debt, *see* Colo. Const. art. II, § 12, the court of appeals correctly concluded that the 1990 Judgment constitutes an unpaid debt and nothing more. Reasoning further, husband then argues that he therefore cannot be found guilty of punitive contempt for debts covered by the 1990 Judgment. We disagree.

■ While as a general rule the Colorado Constitution prohibits the imprisonment of a person for debt, one of the noted exceptions to that constitutional mandate is violation of a court order. *See Harvey,* 153 Colo. at 17, 384 P.2d at 266. When imposing punitive contempt the magistrate stated:

> On the punitive portion, you're ordered for 90 days straight time in jail. And that's to vindicate the dignity of ... the court for your continual obstruction of the order of the court, ... costing the court additional time and effort by your efforts.

Therefore, contrary to husband's argument, he was not imprisoned for failing to pay a judgment or a debt. Rather, husband is subjected to imprisonment because of his persistent and willful refusal to obey the temporary orders entered under husband's stipulation, which required monthly payments of child support and maintenance to wife of $330. Husband's argument, taken to its full extent, would immunize from contempt proceedings and court orders all those who fail to comply with trial court orders due solely to the automatic entry of judgment by

operation of section 14–10–122. Such a result would be absurd and would find no basis in the text or context of the statute.

■ Husband further argues that he was not provided notice and that "[n]o court ever found that [he] had any ability to pay the 1990 judgment"; therefore, the punitive contempt ruling cannot stand. However, on this record, we are not so persuaded. On July 6, 1995, wife filed her Verified Motion for Punitive Contempt Citation setting forth the necessary elements to satisfy the notice requirements. Those elements were that husband "refused to pay child support," acted in "willful violation of existing orders of the court," and that husband knew that he had the obligation to pay under the temporary orders and the 1990 Judgment. At the November 21, 1995 hearing, the magistrate, taking notice of the court file, found that husband had not complied with the court's prior orders, that husband knew of the prior orders, that husband had the ability to pay, and that those "orders for child support were not paid." [5]

■ Whatever comfort husband may find in the magistrate's interchangeable use of the terms "orders" and "judgment" is of no legal effect, in our view. Moreover, our reading of the magistrate's findings of November 21, 1995 causes us to conclude that there were findings of husband's ability to make the ordered payments and that husband willfully failed to make such payments in accordance with the temporary orders. The magistrate found as follows:

> Well, the Court finds that as to orders, there were orders.... And there was [a] finding, at that time, of the ability to pay. And the Court finds that there were orders. And the·Respondent was aware of the orders. And as to those two, he had the ability to comply. That was found at the time that those were entered.... As to the punitive, [the] Court finds the same thing. There were orders that were entered. The orders were known to the Respondent. The Respondent appealed those orders on several occasions. And

the court takes notice of its own file.... [I]n the Court's view, [husband's refusal] goes to the issue of wilfulness [sic] or wantonness and ability to pay.... So, there were some payments that were made. And that does not, in this Court's view, absolve the Respondent of his duty to pay. Court finds that these orders for child support are judgments when they are not paid. And there was nonpayment. And the record of nonpayment is so long, so much a part of the court record, previously addressed in, at least, one contempt citation with review. Respondent had been admonished in the past by this Court, specifically about his behavior and not coming forward with his payments. And the intent of the Court is to get these payments made.... And I think you've had ample opportunity to follow through with the orders of the Court. And you haven't done that. And your attempts are, and have been, to dodge the order, to not pay, to make it difficult for the Petitioner to collect child .support. And based on those issues, I find that punitive sanction is appropriate.

■ We agree that the better practice is to set forth findings that more explicitly (1) identify the particular order; (2) describe contemnor's knowledge; (3) state contemnor's ability to pay; and, (4) find contemnor's refusal to pay was willful. However, on this record the magistrate's findings are minimally sufficient to support the ruling imposing punitive contempt sanctions.

Therefore, we conclude that the trial court retained sufficient authority to enforce its child support and maintenance orders. Accordingly, we hold that the trial court could enforce its temporary orders through punitive contempt proceedings, despite the fact that a judgment had entered on amounts due and not paid under such orders. We further hold that the trial court's punitive contempt orders should be upheld and therefore reverse the judgment of the court of appeals.

---

**5.** At the time of the remedial order, the court found that Husband had a present ability to pay

$11,753.24 plus $8,000 for the ring.

## IV.

■ The second question upon which we granted certiorari was whether *In re Marriage of Woodrum*, 618 P.2d 732 (Colo.App. 1980), must be overruled. To the extent it conflicts with our judgment today, it is.

The factual predicate in *Woodrum*, however, is different from the case before us. In *Woodrum*, the contempt order of the trial court was for remedial contempt as opposed to punitive contempt. Nonetheless, *Woodrum* states that "entry of a judgment for past due support payment is an exclusive remedy; such judgments and remedial contempt orders are alternative, not cumulative, remedies." *Woodrum*, 618 P.2d at 735. By our judgment today we disapprove of that holding.

The court of appeals, applying this language, erred when it held that the failure to pay a money judgment, entered pursuant to section 14–10–122, bars a court from imposing either remedial or punitive contempt sanctions. While we do not question the conclusion that a money judgment at law is not an order to pay but is simply a declaration that one party is indebted to another in a specified amount, we disagree, however, with the court of appeals' holding that, under these facts, because wife chose to have a judgment at law entered for the arrearages she cannot now seek a contempt order to compel payment. *See Nussbeck*, 949 P.2d at 75, 76. Accordingly, we do not agree with that portion of the court of appeals' opinion.

Such an application of the *Woodrum* opinion would lead to the same absurd result we rejected in husband's argument. We will not immunize individuals who willfully refuse to make child support and maintenance payments ordered by trial courts merely because, by operation of law, the amounts due automatically result in a judgment. *See* § 14–10–122(1)(c). Therefore, we further hold that entry of a judgment pursuant to section 14–10–122(1)(c) for past due support payments ordered by the court will not alter a trial court's authority to enforce its order underlying that judgment through contempt proceedings.

The existence of a judgment is immaterial when viewed in the context of a contempt proceeding arising out of support or maintenance orders. Rather, the focus is whether there was a lawful order of the court, knowledge of the order, an ability to make the payments ordered, and a willful disobedience of that order.

To the extent that *Woodrum* can be read to state otherwise, we disapprove of *Woodrum*.

## V.

In sum, we disagree with the court of appeals' conclusion that the entry of the 1990 Judgment bars the trial court from enforcing its underlying temporary orders through punitive contempt proceedings. We hold that the entry of a judgment, by operation of law pursuant to section 14–10–122(1)(c), does not deprive the trial court of its authority to enforce its child support and maintenance orders underlying the judgment.

Accordingly, we reverse the judgment of the court of appeals and remand this case to that court with instructions that it reinstate the trial court's order finding husband in punitive contempt for willfully disobeying an order to pay maintenance and child support, imposing sanctions, and awarding attorney fees.