25CA0492 Marriage of Scott 12-11-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0492
El Paso County District Court No. 17DR2901
Honorable Russell H. Granger, Judge

In re the Marriage of

Jordan Marc Scott,

Appellant,

and

Crystal Renee Richmond,

Appellee.

ORDER AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Welling and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 11, 2025

Jordan Marc Scott, Pro Se

No Appearance for Appellee

¶ 1     In this post-dissolution of marriage case involving Jordan Marc Scott (father) and Crystal Renee Richmond (mother), father appeals from an order entered on remand denying his request to disqualify the trial judge, denying his motion to modify parental responsibilities and child support for the parties' two children, and awarding mother attorney fees for discovery noncompliance.  He also seeks to revive his challenge to a November 1, 2019, travel-itinerary order that he raised in a prior appeal and that a division of this court dismissed with prejudice as untimely.  We affirm.

I.     Background Regarding Father's Modification Motion

¶ 2     The parties' marriage ended in 2018.  In September 2022, father moved for equal parenting time, sole decision-making responsibility, and lower child support payments (modification motion).  The trial court issued a case management order (CMO) requiring the parties to exchange mandatory C.R.C.P. 16.2 disclosures, including updated sworn financial statements.  The CMO also said that if the parties were unable to resolve a discovery dispute after meaningful efforts, either party could contact the court clerk to set a status conference forthwith.

## A. Mother's Motion to Compel

¶ 3 Alleging that father hadn't adequately answered her propounded financial discovery requests, mother filed a motion to compel, which included a demand for attorney fees and costs.

¶ 4 Citing C.R.C.P. 16.2(f)(4), father asserted that mother was barred from conducting additional formal discovery without the trial court's authorization. He added that the CMO required her to schedule a status conference before filing the motion to compel.

¶ 5 The trial court ordered that it would address the dispute at the upcoming July 6, 2023, modification hearing. The court also told father to bring all discovery requested by mother in the motion to compel.

## B. July 6 Hearing

¶ 6 During the hearing, father appeared pro se and mother was represented by counsel. At the outset, mother asked that father's wife wait outside the courtroom since she might be called as a witness. Father and his wife then raised spousal privilege. The court said that it would address the spousal privilege issue if and when father's wife was actually called to testify. Although the

2

transcript doesn't explicitly say that father's wife left the courtroom, father argues in his opening brief that the court sequestered her.

¶ 7     When the trial court turned to the discovery dispute, father maintained that mother should have first obtained court authorization or requested a status conference.  When asked whether father had brought the discovery materials, he admitted that he hadn't, claiming that the requests were too demanding and that he didn't have enough time (even though the requests had been pending for nearly two months).  Apart from his sworn financial statement, he provided no other mandatory C.R.C.P. 16.2 financial disclosures.

¶ 8     Mother argued that she would be prejudiced without father's discovery answers as they were relevant, particularly to child support.  She eventually asked for a continuance.

¶ 9     The trial court ultimately authorized mother's discovery requests, ordered father to respond to them within fourteen days, continued the hearing, and denied father's request to reopen discovery.

¶ 10     Other issues at the hearing then arose.  The trial court declined to hear father's oral motion to restrict mother's parenting

time based on allegations that her stepdaughter had expressed suicidal ideation, advising him to instead file a written motion. The court also enforced a November 1, 2019, order requiring both parties to provide an itinerary before traveling with the children.

### C. Father's Discovery Responses

¶ 11 In response to the trial court's order, father repeated his objections to mother's discovery requests and the procedure she employed. Nevertheless, he answered most, if not all, of her requests with the statement, "Objection, the inquiry is not relevant." Additionally, he detailed her alleged noncompliance with discovery, emphasizing that her sworn financial statement was both late and incomplete.

### D. July 18 Order

¶ 12 On July 18, 2023, the trial court concluded that father had failed to comply with his discovery obligations, noting that he simply repeated arguments it had already rejected at the July 6 hearing. As a result, the court denied his modification motion. Recognizing that the denial was a "significant sanction," however, the court allowed him to seek "reconsideration" if, within seven days, he provided the ordered discovery to mother. The court also

determined that mother was entitled to her attorney fees incurred for father's discovery noncompliance.

¶ 13 Six days later, father filed a combined motion for "reconsideration" and for disqualification of the trial judge under C.R.C.P. 97.

### E. August 1 Orders

¶ 14 On August 1, 2023, the trial court issued two separate orders, one denying the reconsideration portion of father's motion, and another setting mother's attorney fee award at $1,400. The court found the fee amount both reasonable and necessary.

### F. Father's Prior Appeal

¶ 15 Father appealed the July 18 order denying his modification motion and the August 1 order denying reconsideration. He also attempted to challenge the November 1, 2019, order requiring the parties to share an itinerary before traveling with the children. A division of this court vacated the August 1 order because the trial court hadn't resolved father's disqualification request before ruling. *In re Marriage of Scott*, slip op. at 4-6 (Colo. App. No. 23CA1432, Nov. 21, 2024) (not published pursuant to C.A.R. 35(e)). In turn, the division vacated the July 18 order as premature, concluding the

5

order wasn't final and appealable due to father's unresolved disqualification request. *Id.* at 6. The division remanded the case for the trial court to decide the disqualification request and thereafter address the "reconsideration" motion. *Id.* at 8. The division also dismissed with prejudice father's appeal of the November 1, 2019, order as untimely. *Id.* at 7.

## G. Remand Proceedings

¶ 16 On February 3, 2025, the trial court denied father's disqualification request and declined to reconsider its previous denial of father's modification motion and award of mother's attorney fees.

## II. Analysis

## A. November 1 Order

¶ 17 Father first contends that the prior division erred by dismissing, as untimely, his challenge to the November 1, 2019, order requiring the parties to share an itinerary before traveling with the children. Specifically, he says that the November 1, 2019, order is void for lack of subject matter jurisdiction because the court included child abduction prevention measures without first

making the findings required by section 14-13.5-108(2), C.R.S. 2025. We disagree.

¶ 18    At the end of the July 6, 2023, hearing, father said that he "might go up to the mountains" with the children for two weeks. Mother, relying on the November 1 order, asked for an itinerary. He argued, without any legal support, that the order was "unlawful." The trial court responded that, if the order required an itinerary, he must comply.

¶ 19    In the prior appeal, the division determined that it lacked appellate jurisdiction to consider father's challenge because father had waited more than three years before appealing the November 1 order. *See Scott*, No. 23CA1432, slip op. at 7.

¶ 20    A party may raise a challenge to the trial court's subject matter jurisdiction at any stage of the proceedings. *See In re Marriage of McClure*, 2024 COA 70, ¶ 7. We review de novo whether a trial court has subject matter jurisdiction. *In re Marriage of Roth*, 2017 COA 45, ¶ 13.

¶ 21    Subject matter jurisdiction concerns a court's authority to deal with the class of cases in which it renders judgment. *Nguyen v. Swedish Med. Ctr.*, 890 P.2d 255, 256 (Colo. App. 1995). The

Colorado Constitution vests district courts with general subject matter jurisdiction in civil actions, which includes domestic relations proceedings. *See* Colo. Const. art. VI, § 9; *In re Marriage of Thorburn*, 2022 COA 80, ¶ 15. Any limitation on the court's subject matter jurisdiction by the legislature must be explicit. *Thorburn*, ¶ 15. And the court has continuing jurisdiction to enforce dissolution-related orders. *See Wilson v. Prentiss*, 140 P.3d 288, 291 (Colo. App. 2006) ("The dissolution court retains jurisdiction to enforce its orders and to ensure complete resolution of the issues addressed in the orders . . . ."); *In re Marriage of Nussbeck*, 974 P.2d 493, 497 (Colo. 1999) (same).

¶ 22 Contrary to father's contention, because this is a domestic relations proceeding, the trial court had subject matter jurisdiction to enter the November 1 order, which managed the parties' travel with the children. *See Thorburn*, ¶ 15. And the trial court had the authority to enforce that order at the July 6 hearing. *See Wilson*, 140 P.3d at 291; *Nussbeck*, 974 P.2d at 497.

¶ 23 We aren't persuaded otherwise by father's reliance on section 14-13.5-108(2). Although we agree with father that a trial court may err if it imposes abduction prevention measures without first

finding "a credible risk of abduction of the child[ren]," § 14-13.5-108(2); *see In re Marriage of Badawiyeh*, 2023 COA 4, ¶¶ 15-17, such an error doesn't implicate the court's subject matter jurisdiction. To the contrary, section 14-13.5-108(2) contains hallmarks of a traditional directory provision, not a jurisdictional one. *See Babcock v. People*, 2025 CO 26, ¶ 18 (explaining that a trial court's failure to follow a directory provision "may be erroneous" but doesn't "necessarily invalidate an action"). By way of example, the statute doesn't mention jurisdiction, it uses affirmative language (such as the court "shall enter" and "shall consider") rather than negative language, and it prescribes no consequence for violating its provisions. *See id.* at ¶¶ 23-25 (discussing indicators of a directory provision versus a jurisdictional provision). Given this, we perceive no explicit limitation on the trial court's subject matter jurisdiction in section 14-13.5-108(2). *See Thorburn*, ¶ 15.

¶ 24  Accordingly, we reject father's jurisdictional challenge to the November 1, 2019, order.

## B. February 3 Order

### 1. Disqualification

¶ 25    For several reasons, father contends that the trial court erred by denying his C.R.C.P. 97 disqualification request. We address and reject them all.

¶ 26    Father's disqualification request fell into two categories:

(1)    challenges to the trial judge's evidentiary and procedural rulings at the July 6 hearing, such as

- failing to consider testimony and evidence regarding purported fraud by court-appointed officials;

- allowing testimony from mother's witnesses who weren't timely disclosed;

- refusing to apply spousal privilege when his wife was sequestered;

- rejecting his oral motion to restrict mother's parenting time;

- denying his request to reopen discovery;

- showing favoritism in managing discovery and disclosure obligations, including imposing attorney fees against him for failing to make disclosures; and

o applying the same standard to pro se litigants as to attorneys; and

(2) complaints about the trial judge's demeanor during the July 6 hearing, alleging that the judge displayed hostility, made belittling remarks, laughed at him, and expressed a personal interest in remaining on the case.

¶ 27 Disqualification in a civil proceeding falls within the discretion of the trial judge, whose decision we won't overturn on appeal absent an abuse of that discretion. *Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 12. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair. *In re Marriage of Gromicko*, 2017 CO 1, ¶ 18. We independently review, however, the sufficiency of a disqualification motion. *Bocian*, ¶ 12.

¶ 28 C.R.C.P. 97 provides that "[a] judge shall be disqualified in an action in which he is interested or prejudiced . . . or is so related or connected with any party or [their] attorney as to render it improper for him to sit on the trial, appeal, or other proceeding therein."

¶ 29 Under C.R.C.P. 97, disqualification is required when the motion and supporting affidavits allege sufficient facts from which a reasonable observer could question the judge's impartiality. *See*

*Bruce v. City of Colorado Springs*, 252 P.3d 30, 36 (Colo. App. 2010); *People in Interest of C.Y.*, 2018 COA 50, ¶ 15. Subjective belief, speculation, or conclusory assertions are insufficient. *See Edmond v. City of Colorado Springs*, 226 P.3d 1248, 1252 (Colo. App. 2010); *see also Comiskey v. Dist. Ct.*, 926 P.2d 539, 544 (Colo. 1996) (the mere allegation that a judge engaged in an ex parte communication isn't enough to require recusal).

¶ 30 The trial judge must accept the factual statements in the motion and accompanying affidavits as true, even if they believe them to be false or erroneous. *Bocian*, ¶ 15.

¶ 31 Taking father's statements as true, they don't establish grounds for disqualification. *Id.* at ¶ 22. The challenged evidentiary and procedural rulings are adverse decisions. They don't, without more, establish bias or prejudice. *See Liteky v. Unites States*, 510 U.S. 540, 555 (1994) (holding that judicial rulings "almost never constitute a valid basis for a bias or partiality motion"); *see also In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007) ("Adverse rulings, standing alone, do not constitute grounds for claiming bias or prejudice.").

¶ 32   The judge's demeanor at the July 6 hearing also doesn't support a bias or partiality challenge. *See Liteky*, 510 U.S. at 555-56 (holding that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge"); *see also Bocian*, ¶ 24 ("[W]hile hostility between the court and counsel may warrant disqualification in some cases, it is only required where 'a judge so manifests an attitude of hostility or ill will toward an attorney that the judge's impartiality in the case can reasonably be questioned.'" (citation omitted)).

¶ 33   Based on our review of the hearing transcript, we discern no "bent of mind" preventing the trial judge from dealing fairly with father. *In re Marriage of McSoud*, 131 P.3d 1208, 1223 (Colo. App. 2006). The judge was generally patient and accommodating, taking time to explain procedures and expectations considering father's pro se status.

¶ 34   Father nonetheless points to the judge's statement, "You may think you are rid of me but I'm going to ask judicial to send you back for that hearing," as evidence that the judge had a personal stake in the case. But the judge was simply noting that he would

13

continue presiding over the case because he was already familiar with the discovery dispute.

¶ 35      We also aren't persuaded that the judge's laughter required his disqualification. While we don't condone a judge's laughter in response to arguments by any party, the instances of laughter on this record don't establish bias or prejudice. *See Ark. Voter Integrity Initiative, Inc. v. Thurston*, 2024 Ark. 43, at 12 (trial judge's laughter in response to the plaintiffs' motion to recuse didn't, by itself, show bias or prejudice sufficient to require recusal). To be sure, the transcript indicates that, after some of the instances when the judge laughed in response to father's arguments, the judge explained that he was "not trying to be difficult on [father]" and that he would give father "some latitude" as a pro se litigant. The remaining instances were brief and don't reflect any bias or prejudice that required the judge's disqualification.

¶ 36      Father also says that the trial court's violation of his civil rights is actionable under 42 U.S.C. § 1983. But father didn't preserve any argument under that statute in the trial court, so we don't address it. *See In re Marriage of Pawelec*, 2024 COA 107, ¶ 38 (to preserve an issue for appeal, the issue must be brought to the

trial court's attention so that the court has an opportunity to rule on it); *see also McGihon v. Cave*, 2016 COA 78, ¶ 16 (appellate court doesn't consider constitutional issues raised for the first time on appeal).

¶ 37 Father also asserts that the trial court violated his constitutional rights by improperly denying him access to the July 6 hearing transcript. But he doesn't provide any support in the record to substantiate this claim, saying only that a transcriptionist initially couldn't locate the hearing and that father had been "unsuccessful at receiving the transcript." *See* C.A.R. 28(a)(7)(B) (appellant's opening brief must contain "citations to the authorities and parts of the record on which the appellant relies"); *O'Quinn v. Baca*, 250 P.3d 629, 631-32 (Colo. App. 2010) (parties shouldn't expect an appellate court to peruse the record without the help of pinpoint citations); *see also Cikraji v. Snowberger*, 2015 COA 66, ¶ 10 (pro se parties are still bound by the same procedural rules as a party represented by an attorney).

¶ 38 Nor does father explain how the lack of the transcript prejudiced his substantial rights. *See* C.R.C.P. 61; C.A.R. 35(c). The division in the prior appeal, having the benefit of the transcript,

15

remanded the case back to the trial court because it never ruled on the disqualification issue. *See Scott*, No. 23CA1432, slip op. at 8. And on remand, the trial court had the transcript, and so do we. Absent this necessary showing of prejudice, father hasn't established a basis to reverse. *See People in Interest of A.C.*, 170 P.3d 844, 845 (Colo. App. 2007) (concluding that an alleged error, without a valid allegation of prejudice, isn't grounds for reversal).

¶ 39 Father relatedly asserts that the trial judge violated his due process rights by forcing him to proceed before a demonstrably biased tribunal and that the judge exhibited a pattern of judicial misconduct. Father, however, doesn't develop this assertion or support it with legal analysis. He references a single case without explaining its relevance to the facts here. Thus, we decline to address this undeveloped argument. *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (appellate court will not consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12.

¶ 40 We similarly decline to address father's other broad accusations of systemic bias, all of which are either speculative or conclusory. *See Zander*, ¶ 27; *Edmond*, 226 P.3d at 1252.

Accordingly, on this record, we conclude that the trial court didn't abuse its discretion by denying father's disqualification request. *See Bocian,* ¶ 12.

### 2. Motion for Reconsideration

¶ 41    We next turn to father's contentions related to the reconsideration portion of his combined motion.

¶ 42    To begin, we note that father prevailed in the prior appeal when the division vacated the August 1 order denying his motion to reconsider. *See Scott,* No. 23CA1432, slip op. at 8. As a result, we don't address any arguments related to that August 1 order.

¶ 43    Father again contends that he lacked the transcript of the July 6 hearing when he filed his motion for reconsideration and therefore couldn't address discovery-related issues. Having already concluded that he doesn't provide any record support for this claim, we need not address it further.

¶ 44    Even so, father insists that the trial court violated C.R.C.P. 16.2(f)(4) by allowing duplicative discovery of information previously produced in 2018. But again, he doesn't provide us with supporting record citations, contrary to C.A.R. 28(a)(7)(B). We decline to scour the nearly 8,000 pages of court record and

numerous transcripts in search of evidence supporting father's contentions for which he provides no citations. *See O'Quinn*, 250 P.3d at 631-32; *see also Black v. Black*, 2018 COA 7, ¶ 67 ("'Judges are not like pigs, hunting for truffles buried in' the parties' submissions." (alteration and citation omitted)).

¶ 45 Father also argues that the trial court erred by allowing extensive additional discovery without authorization, thus violating C.R.C.P. 16.2(f)(4). The record belies his argument. The court authorized mother's requests at the July 6 hearing and ordered father to respond. Father failed to comply.

¶ 46 Next, father claims that the "trial court's dismissal of his modification motion constituted an extreme sanction unsupported by the record and violative of due process."

¶ 47 Due process requires that a party be provided notice and a meaningful opportunity to be heard. *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965). We review a trial court's decision imposing sanctions for discovery violations for an abuse of discretion. *Pullen v. Walker*, 228 P.3d 158, 161 (Colo. App. 2008).

¶ 48 The record reflects that the court held a hearing on the discovery dispute, allowed father to explain his nondisclosure and

present further argument, and ordered him to answer the required discovery. When he failed to comply and simply repeated the same arguments, the court dismissed his modification motion. But recognizing that the dismissal was a severe sanction, the court still afforded him yet another opportunity to comply. He again failed to do so. Because the record supports the court's dismissal sanction and because father had ample notice and an opportunity to be heard, we discern no due process violation and no abuse of discretion in the court's dismissal sanction.

¶ 49 Father also maintains that the trial court erred by treating him differently because he was pro se. He points out that at the July 6 hearing, the court excused mother's discovery noncompliance while punishing him for his own. Mother admitted her discovery failures and asked father to email her counsel a list of any missing items before the next hearing, thus demonstrating an effort to comply with her discovery obligations. As to father, the court ordered him to comply with his discovery obligations and then continued the matter. In doing so, the court acknowledged that it was extending him leniency:

> You should have responded, ok? You should have. And you didn't, I don't think you did it maliciously[,] but you didn't respond. You should have complied with my orders to the best of your ability, but you didn't. If you were an attorney, I would be furious with you for not even trying to comply. But again, you get some latitude there.

¶ 50 The record therefore demonstrates that father wasn't treated improperly given his pro se status. To the extent that he was treated differently at all, the court extended him more leniency, not less, than similarly situated parties represented by counsel. *See Adams v. Sagee*, 2017 COA 133, ¶ 10 ("[P]ro se parties must comply with procedural rules to the same extent as parties represented by attorneys.").

### C. Mother's Entitlement to Attorney Fees

¶ 51 Father also contests mother's entitlement to an award of $1,400 in attorney fees, which the trial court imposed due to his noncompliance in discovery.

¶ 52 A trial court may impose a variety of sanctions on a party who fails to comply with their discovery obligations, including awarding the opposing party their reasonable attorney fees and costs. *See Pinkstaff v. Black & Decker (U.S.) Inc.*, 211 P.3d 698, 702 (Colo.

20

2009) (citing C.R.C.P. 37). As before, we review a trial court's decision imposing sanctions for discovery violations for an abuse of discretion. *Pullen*, 228 P.3d at 161.

¶ 53 We conclude that the record supports the trial court's attorney fee award. At the July 6 hearing, the court ordered father to respond to discovery. He refused, repeating objections the court had already rejected. The discovery sought by mother regarding father's finances was directly relevant to the issues he had raised: lower child support payments, equal parenting time, and sole decision-making responsibility. Mother would have been prejudiced proceeding without it. The court also found that mother's requests fell within C.R.C.P. 16.2(f)(3)'s limit for pattern and nonpattern interrogatories. Because the court's findings are supported by the record and the sanction is proportionate to the violation, we discern no abuse of discretion.

## D. Motion to Restrict

¶ 54 Finally, father contends, in cursory fashion, that the trial court erred by refusing to consider child safety issues when it declined to hear his oral motion to restrict mother's parenting time due to allegations that her stepdaughter had suicidal ideations.

21

Because father doesn't adequately develop this argument, we decline to address it.  *See Zander*, ¶ 27.

### III.    Disposition

¶ 55    We affirm the order.

JUDGE WELLING and JUDGE GOMEZ concur.