25CA0522 Marriage of Volovlek 06-18-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0522
Pitkin County District Court No. 08DR34
Honorable Laura C. Makar, Judge

In re the Marriage of

Cristina Anderson,

Appellee,

and

Edward Allyn Volovlek,

Appellant.

ORDER AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE GROVE
Gomez and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 18, 2026

R&B Law, P.C., Josie L. Burt, Carbondale, Colorado, for Appellee

Edward Allyn Volovlek, Pro Se

¶ 1      Edward Allyn Volovlek (father) appeals the district court's order finding him in remedial contempt and imposing remedial contempt sanctions against him for the failure to pay child support to Cristina Anderson (mother).  We affirm and remand the case so the district court may determine an appropriate award of reasonable appellate attorney fees and costs in accordance with this opinion.

## I.      Background

¶ 2      The parties divorced in 2007 in Michigan, where an order for child support was originally entered for the parties' only child.  The parties registered their Michigan divorce decree in Colorado, and in 2010, via a joint stipulation that was adopted as an order of the court, modified father's child support obligation to $522 per month.  In June 2024, mother moved to have father held in both remedial and punitive contempt for the failure to pay approximately $79,000 in child support and statutory interest, plus approximately $8,000 in unreimbursed medical expenses for the child.

¶ 3      After a hearing, the district court declined to hold father in punitive contempt.  However, the court found father to be in remedial contempt given his longstanding failure to pay both child

1

support and his share of the child's medical expenses. In support, the court found that it was undisputed that father was aware of the child support order and, except for three small payments, father had failed to pay child support since late 2015.

¶ 4 The district court also found that father had the ability to pay mother the outstanding child support and medical expense arrearages. The court cited father's ability to earn at least minimum wage in Michigan where he resided and the substantial home equity that was available to him from his primary residence.

¶ 5 Accordingly, as a remedial sanction, the court fined father $100 per day until he paid mother $90,888.90, which represented his child support arrearage with statutory interest, and $7,773.24 for the medical expenses. However, the court gave father approximately two and a half months to comply before the daily fine would begin accruing.

¶ 6 The district court also awarded mother attorney fees and costs related to the contempt proceeding in the amount of $11,474.86.

## II. Remedial Contempt Finding and Sanctions

¶ 7 On multiple grounds, father challenges the district court's finding of remedial contempt and resulting sanction of a $100 per

day fine. We conclude that many of father's contentions are unpreserved for appeal, and we are otherwise not persuaded that the district court erred.

### 1. Standard of Review and Generally Applicable Law

¶ 8 A court has the discretion to find a party in contempt, and we will not reverse that decision unless the court abuses its discretion reaching it. *In re Marriage of Sheehan*, 2022 COA 29, ¶ 23. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *In re Marriage of Bergeson-Flanders*, 2022 COA 18, ¶ 10.

¶ 9 One basis for a court's contempt finding is when a party has not complied with a lawful court order that the party knew about. *See Sheehan*, ¶ 24 (citing *In re Marriage of Cyr*, 186 P.3d 88, 91 (Colo. App. 2008)); C.R.C.P. 107(a)(1) (defining "contempt" as "disobedience or resistance by any person to or interference with any lawful . . . order of the court"). Once those two factors have been established, the burden shifts to the party to show that he or she was unable to comply with the order. *Sheehan*, ¶ 24.

¶ 10 There are two types of contempt sanctions: punitive and remedial. *Cyr*, 186 P.3d at 91. A court uses punitive sanctions,

3

which are criminal in nature, to punish a party, and they require a showing of willful disobedience on the part of the contemnor. *Id.* at 91-92. The district court in this case did not impose a punitive sanction.

¶ 11 Rather, the district court imposed a remedial sanction. "[R]emedial sanctions are civil in nature and are intended 'to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform.'" *Id.* at 92 (citation omitted). The purpose of remedial sanctions is for the benefit of another. *See id.* When the court orders a remedial contempt sanction, it must specify the means by which the contemnor can purge the contempt. *See id.*

¶ 12 To order a remedial sanction, the court must make "two findings of present duty and ability to pay: one which supports the contempt finding, and a second which justifies the imposition of a remedial order." *In re Marriage of Hartt*, 603 P.2d 970, 972 (Colo. App. 1979).

### 2. Ability to Pay

¶ 13 As best as we can discern, father asserts that the district court erred when it found that he had the ability to comply with the

court's orders by paying the arrearages owed to mother. We are not persuaded.

¶ 14    Father first argues that the district court abused its discretion by imputing income to him. But we conclude that any error was harmless. It is true that, when assessing whether a party has the ability to comply for remedial contempt purposes, the court is generally prohibited from imputing income to the contemnor. *Sheehan,* ¶¶ 37-39. This is because "a finding of a present ability to comply based on the ability . . . to secure a better job places the jailhouse keys in someone else's hand." *Id.* at ¶ 37.

¶ 15    But here, although the district court imputed income to father, it did so at a level that was *less than* the amount of money that father has conceded he actually makes. Specifically, the district court imputed father a full-time income using the minimum wage in Michigan, which is $12.48 per hour or approximately $26,000 annually. Yet, father testified at the hearing that he was earning approximately $36,000 per year from his self-employment, and consistent with that testimony, father's opening brief represents that he presently makes "less than $37,000" per year.

¶ 16    Father has not explained how the court's reliance on a level of imputed income that is less than his actual income has prejudiced him, and we therefore conclude that any error on the part of the district court was harmless.  *See* C.R.C.P. 61 (instructing courts to disregard any error which "does not affect the substantial rights of the parties"); *People in Interest of A.C.*, 170 P.3d 844, 845 (Colo. App. 2007) (an alleged error, without a valid allegation of prejudice, is not grounds for reversal).

¶ 17    Similarly, father claims that the district court overvalued his home and the equity available to him when assessing the resources that he had available to pay the amounts owed to mother.  The district court found that it was uncontroverted that "whether the Court looks at that [$]500,000 or [$]700,000 number [for the home's value], either way the amount of equity that [father] has in his personal residence . . . would allow him to pay the total amount that is currently owed" to mother.

¶ 18    The district court's findings as to father's home equity were supported by the record.  Father suggested at the hearing that he could use his home equity to satisfy his obligations to mother and

"absolutely" agreed that he had "at least $180,000 of equity in the home that [he could] pull."

### 3. Nature of Sanction Imposed

¶ 19 We next consider and reject father's contention that the district court erred because the sanction that it imposed — a $100 per day fine until he paid the outstanding child support and medical expenses owed to mother — was punitive in nature.

¶ 20 A remedial sanction "exists primarily to enforce obedience to a trial court's order," *In re Marriage of Nussbeck*, 974 P.2d 493, 499 (Colo. 1999), and the "contemnor may purge [remedial contempt] by complying with the court order in question," *id.* at 498. Here, contrary to father's assertion, the daily fine imposed by the district court was in fact a remedial sanction given that it was connected to a specific act of compliance, namely his full payment of the amounts owed to mother. While father complains that the sanction was improper because it had "no termination date and no stated purge condition other than payment in full," we are not aware of any legal authority placing such limits on remedial sanctions. And the cases cited by father, to the extent that they even exist, do not stand for such a proposition. Indeed, given that the district court

7

found that father had the present ability to pay the total amount currently owed to mother, coercing father's full payment of the outstanding child support and medical expenses arrearages was the primary purpose of the remedial contempt sanction. *See Nussbeck*, 974 P.2d at 498-99; *Hartt*, 603 P.2d at 972.

### 4. District Court's Award of Attorney Fees

¶ 21 Father also argues that the district court erred by awarding mother her attorney fees arising from the contempt proceeding on the sole ground that the court was required to equitably apportion those fees based on the parties' respective financial resources under section 14-10-119, C.R.S. 2025. We disagree.

¶ 22 As a preliminary matter, because "a party is not required to object to the trial court's findings in the trial court to preserve a challenge to those findings," *People in Interest of D.B.*, 2017 COA 139, ¶ 30, we reject mother's assertion that father failed to preserve this issue for our review.

¶ 23 Nevertheless, we are unpersuaded by father's contention because it is apparent that the district court awarded mother attorney fees under C.R.C.P. 107(d)(2), which provides for "[c]osts and reasonable attorney's fees in connection with the [remedial]

contempt proceeding." And an award of attorney fees under C.R.C.P. 107(d) is distinct from other awards of attorney fees in domestic relations proceedings. *See Catron v. Catron*, 577 P.2d 322, 324 (Colo. App. 1978) (recognizing that section 14-10-119 "controls the award of attorneys' fees in a domestic relations case except in contempt proceedings," which fall under C.R.C.P. 107(d)). Accordingly, section 14-10-119 did not apply, and the court did not err by failing to consider the parties' respective financial resources.

### 5. Father's Unpreserved Contentions

¶ 24 Lastly, we decline to consider three of father's contentions, which he failed to preserve for our appellate review.

¶ 25 "It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal." *Melat, Pressman & Higbie, L.L.P. v. Hannon Law Firm, L.L.C.*, 2012 CO 61, ¶ 18; *see also Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1188 n.4 (Colo. App. 2011) ("A party's mere opposition to its adversary's request . . . does not preserve all potential avenues for relief on appeal. We review only the specific arguments a party pursued before the district court."). And here, father failed to present at least three of his contentions for appeal.

¶ 26 To start, father did not preserve his allegation that the district court violated his due process rights by admitting and considering evidence that he never had an opportunity to review. Specifically, father now claims that he did not receive copies of mother's exhibits in the mail until the day after the hearing. But even assuming that father is correct as to when he received the exhibits, at no point did he raise the issue of not having previously been able to review mother's exhibits at the hearing. Nor did he object to the admission of any of mother's exhibits. Thus, we decline to consider his unpreserved contention of error. *See Am. Family Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 325 (Colo. 2009) ("In order to properly preserve an objection to evidence admitted at trial, a timely and specific objection must appear in the trial court record.").

¶ 27 Next, while father now claims that the parties' 2010 stipulation and resulting order concerning child support are somehow invalid and unenforceable for lack of a definite termination date, nowhere did father raise such an argument before the district court. Therefore, this issue is also unpreserved. *See Melat,* ¶ 18.

¶ 28   Similarly, we conclude that father failed to preserve his assertion that mother's alleged noncompliance with the financial information exchange provisions of the parties' 2010 stipulation somehow constituted a defense to a finding of remedial contempt. While at the beginning of the hearing, father referenced a motion to compel mother to comply with certain provisions of the parties' stipulation, which he had filed a week before the hearing, he conceded that he "got that in probably too late for consideration," and the court thus declined to consider any issues raised by father in that motion. Moreover, father has not cited, nor have we been able to locate, a place in the record where he argued that mother's alleged noncompliance with other provisions of the stipulation somehow excused him from paying child support. *See* C.A.R. 28(a)(7)(A) (requiring the appellant to identify "the precise location in the record where the issue was raised" in the record). Thus, this issue is also unpreserved.

### III.   Mother's Request for Appellate Attorney Fees and Costs

¶ 29   Mother requests an award of her appellate attorney fees and costs on two separate grounds.

¶ 30    First, mother asserts that, because she was awarded attorney fees by the district court and prevailed in the contempt proceeding, she is entitled to attorney fees and costs for defending father's appeal.  A party seeking attorney fees must "explain the legal and factual basis" for their request.  C.A.R. 39.1.  And here, whether to award attorney fees and costs to mother is a close call given that the legal authority she cited in support of her assertion is not directly applicable to this proceeding.  *See Melssen v. Auto-Owners Ins. Co.*, 2012 COA 102, ¶ 75 (awarding a successful appellant attorney fees under the statutory scheme governing the unreasonable delay or denial of insurance benefits, where the party was also awarded attorney fees in the district court).

¶ 31    Yet, it remains apparent to us that the district court awarded mother attorney fees under C.R.C.P. 107(d)(2).  And because costs and attorney fees incurred in connection with an appeal of a contempt order are costs and fees incurred "in connection with the contempt proceedings," mother is accordingly entitled to an award of her appellate attorney fees and costs arising from her successful defense of father's appeal of the remedial contempt order.  *See Madison Cap. Co. v. Star Acquisition VIII*, 214 P.3d 557, 562 (Colo.

12

App. 2009) (citing C.R.C.P. 107(d)(2)); *In re Marriage of Dean*, 2017 COA 51, ¶ 33. We therefore exercise our discretion under C.A.R. 39.1 and remand for the district court to determine an award of mother's reasonable appellate attorney fees and costs incurred in defending against father's appeal.

¶ 32    Because we conclude that mother is entitled to an award of her appellate attorney fees and costs under C.R.C.P. 107(d)(2), we need not decide whether she is alternatively entitled to an award of attorney fees for having to respond to father's opening brief, which she alleges was substantially noncompliant with the appellate rules.

¶ 33    We do, however, pause to note that father's brief largely failed to follow the appellate rules. *See* C.A.R. 32(a) (font and formatting requirements); C.A.R. 28(a)(5) (record citations); C.A.R. 28(a)(7)(B) (citations to legal authority). Moreover, three of the cases cited by father — *In re Marriage of Stevenson*, *In re Marriage of Lambert*, and *In re Marriage of Rankin* — do not appear to exist. This suggests to us that portions of father's brief may have been drafted with the use of generative artificial intelligence (GAI). "[U]sing a GAI tool to draft a legal document can pose serious risks if the user does not thoroughly review the tool's output." *Al-Hamim v. Star Hearthstone,*

*LLC*, 2024 COA 128, ¶ 32.  Self-represented litigants must be particularly careful, as they "may not understand that a GAI tool may confidently respond to a query regarding a legal topic," regardless of whether the answer contains errors and hallucinations, which are case names and citations that a GAI tool makes up.  *Id.* at ¶¶ 2, 32.

¶ 34    Accordingly, father is now on notice that (1) future noncompliance with C.A.R. 28 or other applicable appellate rules could lead to our striking the offending brief or imposing other appropriate sanctions, including dismissal, *see* C.A.R. 38(a), *Bruce v. City of Colo. Springs*, 252 P.3d 30, 32 (Colo. App. 2010); and (2) errors caused by GAI in future filings may result in sanctions.  *See Al-Hamim*, ¶ 41.

## IV.    Disposition

¶ 35    The order is affirmed.  We remand the case so the district court may determine an appropriate award of reasonable appellate attorney fees and costs in accordance with this opinion.

¶ 36    JUDGE GOMEZ and JUDGE MOULTRIE concur.