Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 13, 2018

**2018 CO 91**

**No. 17SA130, <u>People v. Sease</u>—Contempt—Acts or Conduct Constituting Contempt of Court.**

In this direct appeal, the supreme court reviews the water court's contempt order, which imposed punitive and remedial sanctions on the defendant. The water court determined that the defendant was responsible for work performed on his property, the Sease Ranch, which caused out-of-priority depletions of water from Sheep Creek in violation of a court order. In its ruling, the water court inferred from the defendant's ownership of the Sease Ranch that he, not someone else, was responsible for the contemptuous work.

The supreme court concludes that the water court had ample evidence to find that the defendant is the owner of the Sease Ranch. Further, the supreme court determines that the water court did not shift the burden of proof to the defendant. The water court was entitled to draw reasonable and commonsense inferences from the circumstances before it. Thus, it was appropriate for the water court to consider the lack of evidence, and the corresponding improbability, that someone else entered the Sease Ranch and performed the contemptuous work without the defendant's authorization.

Accordingly, the water court's judgment is affirmed.

## The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

## 2018 CO 91

---

**Supreme Court Case No. 17SA130**
*Appeal from District Court*
Alamosa County District Court, Water Division 3, 07CW53
Honorable Pattie P. Swift, Water Judge

---

**Plaintiffs-Appellees:**

The People of the State of Colorado, *ex rel.* The State Engineer for the State of Colorado, and the Division Engineer for Water Division No. 3,

v.

**Defendant-Appellant:**

Robert Gregg Sease.

---

**Judgment Affirmed**
*en banc*
November 13, 2018

---

**Attorneys for Plaintiffs-Appellees:**
Cynthia H. Coffman, Attorney General
Paul L. Benington, First Assistant Attorney General
    *Denver, Colorado*

**Attorneys for Defendant-Appellant:**
Erich Schwiesow, P.C.,
Erich Schwiesow
    *Alamosa, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.

¶1    Who diverted water from Sheep Creek?  The water court concluded Robert Gregg Sease did—in violation of a 2013 order, which forbade him to use out-of-priority water from Sheep Creek on his Saguache County property ("the Sease Ranch").  Thus, the water court found Sease in contempt of court and imposed both punitive and remedial sanctions on him.

¶2    Sease now seeks review of the water court's contempt order.  He advances two arguments in this direct appeal.  First, he contends that the water court had no basis to find that he owns the Sease Ranch.  This finding was significant because the water court inferred from it that Sease, rather than anyone else, was responsible for the contemptuous work performed on the Sease Ranch that caused water to be diverted from Sheep Creek.  Second, Sease maintains that the water court improperly shifted the burden of proof to him when it noted that there was a lack of evidence in the record that "someone else came on the premises and did [the contemptuous] work without [his] authorization or against his will."

¶3    Because we disagree with Sease on both fronts, we affirm the water court's contempt order.  The matter is therefore remanded to the water court for enforcement of its punitive and remedial sanctions.

## I.  Procedural History

¶4    This case has a tortuous procedural history.  However, because it is relevant to Sease's assertions on appeal, we detail it here.

¶5    Sheep Creek flows through the Sease Ranch.   The construction of various structures on the Sease Ranch caused out-of-priority depletions of water from Sheep

2

Creek. In response, between 2003 and 2007, the State Engineer for the State of Colorado and the Division Engineer for Water Division 3 (collectively "the State") issued Sease five cease-and-desist orders. Sease did not comply with any of them.

¶6 In October 2007, when the State had apparently had enough, it brought a complaint in the water court seeking to enforce the cease-and-desist orders. Among other things, the complaint alleged that two diversions, fourteen ponds or reservoirs, six ditches, eleven pipelines, and thirty dams had been installed on the Sease Ranch to redirect water from Sheep Creek. In his answer, Sease admitted "that he is the owner of the property that is the subject matter of this Complaint, being the Sease [R]anch as described." The parties eventually resolved the complaint through a stipulation ("the first stipulation") in which Sease again admitted that he owns the Sease Ranch. In January 2008, at the parties' joint request, the water court adopted the first stipulation and incorporated it into an order ("the January 2008 Order"). The January 2008 Order required Sease to remove or remediate most of the unlawful structures on the Sease Ranch and enjoined him from allowing the remaining structures to divert or collect any water from Sheep Creek. In addition, it provided that, at "any later proceedings, the Parties will be bound by the facts set forth" in the first stipulation, which included Sease's acknowledgement that he owns the Sease Ranch.

¶7 Seven contempt proceedings followed the January 2008 Order. Although this appeal relates to the seventh proceeding, we pause to summarize the first six in order to place the contempt order challenged by Sease in context.

3

¶8 Just months after the January 2008 Order was issued, the State brought a motion to hold Sease in contempt of court. The State alleged that Sease had failed to remediate several ponds and ditches. To resolve this dispute, the parties reached a new stipulation ("the second stipulation"), which was incorporated into a new order ("the June 2008 Order"). The June 2008 Order imposed a $30,000 penalty and required Sease to replenish all out-of-priority depletions and to submit plans for the court's approval detailing how he would do so. Sease filed two such plans and verified in the application for review of each plan that he owns the Sease Ranch.

¶9 In 2009, the State filed a second contempt motion. This time, the State asserted that Sease had failed to comply with the June 2008 Order because he had not replaced the water taken out of priority from Sheep Creek. The parties entered into another stipulation ("the third stipulation"), in which (1) Sease admitted he was in contempt of court, (2) the State rejected the plans Sease had filed, (3) Sease announced his intentions to appeal that rejection, and (4) Sease agreed to come into compliance with the June 2008 Order within a certain period of time if he lost the appeal.[1]

¶10 The State submitted its third motion for contempt in 2010. In that motion, the State contended that Sease had failed to take the necessary steps either to comply with the June 2008 Order or to follow through on his agreements in the third stipulation. For example, the State reported that one of its employees had closed a headgate that diverted water

---

[1] The record does not reflect whether Sease ever filed an appeal.

from Sheep Creek to the Sease Ranch, had placed a dirt berm in front of that headgate to prevent seepage, and had posted a notice on the headgate advising Sease not to open it. The State claimed that Sease had disregarded this notice—and others like it—at least twice. After a hearing, the water court found that Sease had failed to drain or backfill several ponds and had resumed diverting water from Sheep Creek through at least one pipeline. The court therefore imposed punitive and remedial sanctions, including a ninety-day suspended jail sentence and a $39,000 fine.

¶11 The year 2011 was no different than its three predecessors, at least for our purposes. The State filed yet another contempt motion—the fourth—which complained that Sease had rebuilt obstructions that diverted water from Sheep Creek to a reservoir. That motion was resolved by stipulation of the parties ("the fourth stipulation"). Sease both admitted that he had violated the June 2008 Order and conceded that "prior Orders of the Court[] are valid, ongoing obligations of Mr. Sease." Sease also acknowledged that he had possessed the ability at all times "to comply with the [June 2008 Order]," and that he continued to have "the present ability to comply" with that order. Sease then promised to backfill the reservoir and to permanently prevent the diversion of water from Sheep Creek to the Sease Ranch. Consistent with the fourth stipulation, the water court issued an order ("the 2011 Order") which required that Sease pay a one-time $15,000 fine, incur a $100-per-day charge until the property came into compliance with the June 2008 Order, and complete thirty hours of community service in lieu of a five-day jail sentence.

¶12 The following year, 2012, in what had become by then an annual occurrence, the State filed a contempt motion, its fifth, averring that Sease had failed to timely complete

5

his community service and pay fines that were due, remediate the structures on his property, and stop using water out of priority from Sheep Creek. The parties stipulated that Sease was in violation of the June 2008 Order ("the fifth stipulation"), and the water court issued an order ("the 2012 Order") which adopted the stipulation and imposed more sanctions on Sease, including a one-night jail sentence.

¶13 Just two months later, in April 2012, the State filed its sixth contempt motion, alleging that Sease had built some eighty-six new structures on the Sease Ranch that obstructed Sheep Creek. Sease entered into a stipulation and plea agreement with the State ("the sixth stipulation") to resolve that motion. He pled guilty to indirect contempt, agreed to serve a thirty-day jail sentence, and promised to pay the State more than $160,000 (including for attorney fees and costs). The water court approved the sixth stipulation in 2013 by incorporating its terms into an order ("the 2013 Order"),[2] which included a mandatory, permanent injunction instructing Sease to "*do nothing whatsoever, directly or indirectly, in, along or to Sheep Creek . . . without the prior written approval of the [State].*"[3] The 2013 Order further directed Sease to submit a stream restoration plan. He did so. Sease's plan acknowledged that "[a]ll of the land on which the work . . . will occur is . . . owned by Mr. Sease, the responsible party."

---

[2] Sease's current appeal stems from the water court's determination that he violated the 2013 Order.

[3] Sease appeared in the water court as the 2013 Order was issued and confirmed that he was aware of its terms, including the injunction.

¶14      But this strange saga did not end with the 2013 Order.  In 2015, the State filed its seventh contempt motion, the one that led to the order Sease challenges in this appeal.  In the seventh contempt motion, the State claimed that Sease had violated the 2013 Order in five different ways: (1) building a new impoundment area, new ditches, and two new ponds; (2) installing a new water tank and a metal gate at one end of a ditch; (3) altering two existing ponds; (4) creating a ditch to bypass a pipeline he was estopped from using; and (5) altering parts of Sheep Creek by dredging it, widening a channel, changing the course of its water flow by filling one bank, and placing large rocks within its high-water line.  The water court ordered Sease to show cause as to why he should not be held in contempt of the 2013 Order.  A hearing was then scheduled.

¶15      Thereafter, the water court held a two-day evidentiary hearing ("the contempt hearing" or "the hearing").  At the end of the hearing, it determined that the State had established the following facts beyond a reasonable doubt:

- The 2013 Order was lawfully issued;

- Sease had knowledge of the 2013 Order, as evidenced by the sixth stipulation and Sease's personal statements to the water court that he was aware of the order;

- Sease had the ability to comply with the 2013 Order, as it required either doing nothing or merely asking permission of the State before taking any action that impacted Sheep Creek; and

- Sease willfully and knowingly violated the 2013 Order in seventeen ways, including by erecting new water structures, placing boulders within the ordinary high-water mark, and dredging material in seven sites along Sheep Creek.

Thus, the water court found Sease in contempt of the 2013 Order.

¶16     After a series of sentencing hearings, the water court ultimately imposed punitive and remedial sanctions on Sease. As punitive sanctions, it ordered Sease to serve a ninety-day jail sentence and to pay a $10,000 punitive fine. As remedial sanctions, it ordered Sease to: (1) hire contractors to prepare a plan to remediate all water structures in accordance with the June 2008 Order and the 2013 Order; (2) obtain the State's approval of that plan; (3) pay for all the work required to effectuate the plan; (4) pay $100 per day until certain upland violation sites are brought into compliance with the plan; (5) pay $100 per day until certain stream and wetland restoration is completed; and (6) pay $5,000 each day his contractors have scheduled work on the Sease Ranch and the State supervisors are available to supervise such work, but the work is not completed. The water court also awarded the State the attorney fees and costs incurred in connection with the remedial aspect of the seventh contempt motion. This appeal followed.

## II. Analysis

¶17     The water court inferred from Sease's ownership of the Sease Ranch that he either completed the contemptuous work himself or authorized others to do it. Sease argues that the water court erred in drawing that inference because there was no evidence that he owns the Sease Ranch. Further, asserts Sease, the water court improperly shifted the burden of proof to him when it buttressed that inference by pointing to the lack of

8

evidence in the record that "someone else came on the premises and did [the contemptuous] work" without his authorization or against his will.[4]

¶18     We have little difficulty disposing of Sease's contentions.  We conclude that the water court had ample evidence to find that Sease is the owner of the Sease Ranch, and we reject Sease's contention that the water court shifted the burden of proof to him by noting the absence of evidence that someone else is responsible for the contemptuous work in question.  We therefore affirm the water court's contempt order.

¶19     We first discuss the legal principles that are relevant to Sease's appeal.  We then apply those principles to address the merits of Sease's arguments.

## A.  Relevant Legal Principles

¶20     Courts have "inherent authority to use all powers reasonably required to protect the[ir] efficient function, dignity, independence, and integrity."  *People v. Aleem*, 149 P.3d 765, 774 (Colo. 2007).  This authority includes the power to "hold a party in contempt for any conduct which interferes with the court's administration of justice, is derogatory to the dignity of the court, or tends to bring the judiciary into disrespect."  *Id.*  We have recognized the power of contempt as "absolutely essential to the duties imposed upon

---

[4] Sease does not dispute that if the State proved that someone else performed the contemptuous work on the Sease Ranch with his authorization, he should be held in contempt of the 2013 Order.  *Cf. Vaughn v. People ex rel. Simpson*, 135 P.3d 721, 725 (Colo. 2006) (upholding the trial court's finding that the landowner was responsible for diverting ground water, in violation of an order of the division engineer, where the well was operated either by the landowner or by an authorized member of his family).

the court." *Id.* Such power simultaneously vindicates the court's dignity and authority and preserves its viability. *Id.*

¶21 Contempt proceedings are governed by C.R.C.P. 107. As relevant here, Rule 107 defines contempt as "disobedience or resistance by any person to or interference with any lawful . . . order of the court." C.R.C.P. 107(a)(1). Under Rule 107, there are two types of contempt—direct and indirect—and there are two types of sanctions a trial court can impose when it finds someone in contempt—remedial and punitive. *See* C.R.C.P. 107(a)(2)–(5).

¶22 "Direct contempt" refers to "[c]ontempt the court has seen or heard and is so extreme that no warning is necessary or that has been repeated despite the court's warning to desist." C.R.C.P. 107(a)(2). "Indirect contempt," the type of contempt involved here, is that contempt which "occurs out of the direct sight or hearing of the court." C.R.C.P. 107(a)(3). Remedial sanctions are "[s]anctions imposed to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform." C.R.C.P. 107(a)(5). Punitive sanctions, on the other hand, are imposed to punish through "unconditional fine, fixed sentence of imprisonment, or both, for conduct that is found to be offensive to the authority and dignity of the court." C.R.C.P. 107(a)(4). "Unlike remedial contempt, which the contemnor may purge by complying with the court order in question, punitive contempt cannot be so purged." *In re Marriage of Nussbeck*, 974 P.2d 493, 498 (Colo. 1999). Instead, the contemnor must pay or serve the punitive sanction imposed "because he or she has been convicted of a willful violation of a court order." *Id.*

¶23     Punitive sanctions must be supported by findings of fact that establish beyond a reasonable doubt that: (1) a lawful order existed; (2) the contemnor had knowledge of the order; (3) the contemnor had the ability to comply with the order; and (4) the contemnor willfully refused to comply with the order.[5] *Id.* at 497. In this appeal, Sease does not contest the water court's finding that the State proved the first three elements beyond a reasonable doubt. Sease's only contention is that the water court erred in finding that the State presented sufficient evidence to prove beyond a reasonable doubt that he was the individual who willfully violated the 2013 Order.

¶24     A finding of contempt is within the trial court's sound discretion and may not be reversed absent an abuse of that discretion. *Aleem*, 149 P.3d at 774; *In re Estate of Elliott*, 993 P.2d 474, 478 (Colo. 2000). A trial court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair." *People v. Hoskins*, 2014 CO 70, ¶ 17, 333 P.3d 828, 834.

---

[5] We focus on the punitive sanctions imposed by the water court because remedial sanctions are subject to less rigorous legal requirements. *See generally In re Marriage of Cyr and Kay*, 186 P.3d 88, 92 (Colo. App. 2008) (contrasting remedial sanctions and punitive sanctions). Unlike punitive sanctions, which must be supported by proof beyond a reasonable doubt, remedial sanctions are "civil in nature." *Id.* Additionally, since "the power to punish for contempt should be used sparingly," before punitive sanctions may be imposed, "the contemnor's mental state of willful disobedience must be shown." *Id.* at 91–92. This requirement does not apply to remedial sanctions. *Id.* at 92. Rather, in a contempt proceeding involving remedial sanctions, the moving party must simply make "a prima facie showing" that an order existed and that the contemnor violated it; if a prima facie showing is made, "the burden . . . shifts to the alleged contemnor to show an inability to pay" or to otherwise purge himself of the contempt. *In re Marriage of Lamutt*, 881 P.2d 445, 447 (Colo. App. 1994).

11

¶25 Whether the water court improperly shifted the burden of proof is a question of law. As we have explained, we review questions of law de novo. *Freedom Colo. Info., Inc. v. El Paso Cty. Sheriff's Dep't*, 196 P.3d 892, 897–98 (Colo. 2008).

## B. Application

### 1. There Was Sufficient Evidence That Sease Owns the Sease Ranch

¶26 The water court found that Sease, not someone else, performed the contemptuous work on the Sease Ranch. It did so by drawing a reasonable, commonsense inference from Sease's ownership of the Sease Ranch. Sease insists, however, that no evidence was presented during the contempt hearing to prove he owns the Sease Ranch. We disagree.

¶27 Sease forgets that he has repeatedly admitted in pleadings, stipulations, and through his counsel that he is the owner of the Sease Ranch. He did so from the get-go, in his answer to the State's complaint: "Defendant admits that he is the owner of the property that is the subject matter of this Complaint, being the Sease [R]anch as described." He did so again just months later, when he acknowledged in the first stipulation that he "is the owner and user of . . . 'Sease Ranch Property.'" In the same stipulation, Sease conceded that he "owns and uses many structures located on the Sease Property Ranch" that the State asserts "divert, impound and/or store waters of the state . . . out of priority and to the detriment of senior water rights."[6] Sease's attorney

_____

[6] In a verified application for approval of a plan for augmentation filed with the water court in January 2009, Sease stated that he "is the owner of all land upon which all new or modified structures referenced in this application are located." Although this

12

subsequently admitted, in a brief filed in 2012, that Sheep Creek traversed "Mr. Sease's property." And on multiple occasions during the contempt hearing, Sease's counsel referred to the property at issue as "the Sease Ranch."

¶28 Significantly, Sease expressly agreed in the first stipulation that he would be bound by the facts set forth in that stipulation in "any later proceedings." But even if he hadn't, those facts would nevertheless be binding on him as judicial admissions. "A judicial admission is a formal, deliberate declaration which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." *Kempter v. Hurd*, 713 P.2d 1274, 1279 (Colo. 1986). A judicial admission is binding on the party making it. *Id.*; *Salazar v. Am. Sterilizer Co.*, 5 P.3d 357, 365 (Colo. App. 2000) ("Judicial admissions are binding on the party who makes them, are evidence against such party, and may furnish the basis for a verdict."). That such admissions were not made at the contempt hearing does not rob them of their effect. *Kempter*, 713 P.2d at 1279 (generally, a judicial admission continues "to have effect for a subsequent part of the same proceedings"); *Harvey v. Denver*, 139 P. 1098, 1099 (Colo. 1913) (an admission "operates in a manner to prevent the facts from being afterwards brought into question in the same suit, and is conclusive as to the truth of the matters admitted, in any subsequent action between the same parties").

---

amended water court application was filed in a separate case, it was admitted into evidence without objection at the contempt hearing.

¶29 Moreover, multiple orders have recognized Sease's unconditional acknowledgements regarding his ownership of the Sease Ranch. For example, the January 2008 Order specifically incorporated the facts set forth in the first stipulation and bound Sease to those facts at later proceedings. Likewise, the 2013 Order stated that Sease remained subject to the previous orders. That order also referred various times to the Sease Ranch and included a map of the Sease Ranch titled, "Map of Gregg Sease Property."[7] Other orders similarly referred to Sease's admission that he owns the Sease Ranch or indicated that Sease agreed to take certain remedial actions involving the water structures on "his property," "Defendant's property," or the "Gregg Sease Property." Sease has never sought to correct any of these orders. In fact, he has never asserted, and he doesn't assert now, that any order is inaccurate or was improperly entered.[8]

¶30 As well, uncontroverted testimony and numerous documents presented at the contempt hearing established Sease's ownership of the Sease Ranch. In fact, Sease's own restoration plan, which was filed with the court, provided that "[a]ll of the land on which the work described in this Plan will occur is on land owned by Mr. Sease, the responsible

---

[7] The 2013 Order, which incorporated by reference the sixth stipulation, was admitted into evidence at the contempt hearing.

[8] Relying on CRE 404(b), Sease avers that the water court improperly relied on the parties' stipulations and the orders adopting those stipulations as evidence of his ownership of the Sease Ranch. Rule 404(b) is inapposite. That rule simply "prohibits the use of evidence to show a person acted in conformity with a certain character." *People v. Segovia*, 196 P.3d 1126, 1129 (Colo. 2008). The stipulations and orders about which Sease protests say nothing about his character or whether he has ever acted in conformity with any character trait.

14

party." The same plan confirmed that the land on which the work would occur was the same property subject to the 2013 Order.

¶31 In sum, our review of the record demonstrates that there was overwhelming evidence that Sease owns the Sease Ranch. Therefore, we conclude that the water court did not err in finding that there was "no question" about such ownership or in deducing from it that Sease, as opposed to someone else, was responsible for the contemptuous work performed on the Sease Ranch.[9]

## 2. The Water Court Did Not Shift the Burden of Proof to Sease

¶32 After finding that Sease owns the Sease Ranch and inferring from such ownership that he was responsible for completing the contemptuous work or authorizing others to do it, the water court buoyed that inference by observing that there was no evidence in the record indicating that someone other than Sease had entered the Sease Ranch and performed the work without his authorization or against his will. Sease relies on this

---

[9] Sease makes a halfhearted argument that, even if the State had proven his ownership of the Sease Ranch, "that alone could not constitute sufficient evidence to support the inference that . . . he must have been responsible for the [contemptuous] actions." Someone else could have undertaken the contemptuous actions, posits Sease. Because the circumstantial evidence of property ownership did not eliminate "every other reasonable hypothesis," Sease maintains that it was insufficient. There is no authority for this proposition. Sease relies exclusively on *Diaz v. People*. 420 P.2d 824, 826 (Colo. 1966) ("[e]xclusion of every other Rational hypothesis, which means Reasonable hypothesis, is the test" for evaluating the sufficiency of circumstantial evidence) (quotation marks omitted). But the test discussed in *Diaz* is no longer good law. Nearly half a century ago, we "cast aside as outmoded and as confusing the requirement that the prosecution's evidence, when wholly circumstantial, must exclude every reasonable hypotheses [sic] other than that of guilt." *People v. Bennett*, 515 P.2d 466, 469 (Colo. 1973).

15

comment to argue that the water court improperly shifted the burden of proof to him. Sease is mistaken.

¶33 The water court's oral ruling and written orders clearly show that it placed the burden of proof squarely on the State and kept it there throughout the hearing. At no point did the water court require Sease to prove anything or present any evidence.

¶34 The remark Sease focuses on was made after the water court had already inferred that he was responsible for the contemptuous work because he is the owner of the Sease Ranch. Indeed, it was on the heels of drawing that inference that the water court acknowledged that, "obviously, one could argue maybe someone else came on the premises and did that work instead without Mr. Sease's authorization or against his will." However, the water court wisely dismissed that possibility, explaining that, "if that were the case, [it] would have expected to hear [such evidence] as part of the defense, and that was not presented to the [c]ourt." Thus, the water court confirmed the reasonableness of "the inference that it was Mr. Sease who either completed the work himself or authorized others to do it because he is the owner of those premises."

¶35 Far from shifting the burden of proof to Sease, the water court simply reasoned, after thinking about the evidence further and considering the possibility of an alternate suspect, that the inference it had previously drawn from Sease's ownership of the Sease Ranch was justified:

> Given that Mr. Sease owns the Sease Ranch and has previously, in this case, been involved in the construction of numerous water features and structures on the property, it is reasonable to infer that he was aware of such obvious and visible work being done on his property. Furthermore, it is highly unlikely that an unknown person would bring in heavy

16

equipment to dig a ditch and place and remove pipelines and create and remove an impoundment on Mr. Sease's land without being paid to do it. In addition, it is highly unlikely that an unknown person would pay for [other work] on Mr. Sease's property without being reimbursed for the materials and without being paid for the installation work. Thus, it is highly unlikely that someone would cause all of this work to be done on Mr. Sease's property without his permission and agreement to pay for the work. . . . Accordingly, the court finds that the evidence in this case leads to the conclusion that Mr. Sease himself, or through his agents and/or employees, installed [several] . . . pipelines, constructed . . . [an] impoundment, increased the size of [a] ponded area[,] . . . installed [a] slide gate to work in conjunction with [one of the newly-constructed pipelines], and made the numerous changes in Sheep Creek.

In our view, the water court properly relied on the circumstantial evidence before it, including the improbability that someone else could have entered the Sease Ranch and performed the contemptuous work without Sease's authorization. *See Vaughn*, 135 P.3d at 725 (concluding that the water court could hold the landowner responsible for violating a division engineer's order based on the circumstantial evidence presented, including "the improbability of the well water having been used for any other purpose without leaving signs that could go unnoticed").

¶36    In any event, in finding that Sease was responsible for the contemptuous work completed on the Sease Ranch, the water court did not rely on the observation Sease complains about. As mentioned, the water court had already found Sease responsible when it made the observation. Hence, the observation was inconsequential.

## III. Conclusion

¶37    We conclude that the water court did not err in finding Sease in contempt of the 2013 Order. Therefore, we affirm the contempt order and remand the case for

enforcement of the punitive and remedial sanctions imposed.  The State's request for an award of the attorney fees incurred on appeal is denied.