25CA1060 In Interest of Grynberg 04-30-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1060
Arapahoe County District Court No. 19PR31052
Honorable Michelle Amico, Judge

---

In the Interest of Jack J. Grynberg, Protected Person,

Marcie R. McMinimee, Conservator for Jack J. Grynberg,

Appellee,

v.

Dorsey and Whitney LLP,

Appellant.

---

ORDERS AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE J. JONES
Meirink and Taubman*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 30, 2026

---

Haddon, Morgan, and Foreman, P.C., Jeffrey S. Pagliuca, Christopher P. Montville, Adam Mueller, Delanie Grewe, Denver, Colorado, for Appellee

Holland & Hart LLP, Craig Stewart, Jessica J. Smith, Denver, Colorado, for Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    The law firm of Dorsey & Whitney LLP (Dorsey) appeals the conservatorship court's orders denying its motions to intervene in Jack J. Grynberg's conservatorship case and to set aside an order entered in that case.  We affirm the orders and remand the case to the conservatorship court to determine the reasonable amount of attorney fees incurred on appeal by the appellee, Marcie R. McMinimee (as conservator for Jack J. Grynberg).[1]

## I.    Background

¶ 2    Grynberg was an engineer and businessman who owned and managed oil and gas businesses worth millions of dollars.  He was involved in protracted litigation against his then wife, Celeste, and his children, Rachel, Stephen, and Miriam (the family litigation).[2]  That litigation gave birth to this conservatorship case and ultimately a malpractice case against Dorsey.  Following Grynberg's death in 2021, the conservatorship was closed and a probate case

---

[1] Dorsey's original attorneys for this appeal filed both the opening and reply briefs on Dorsey's behalf.  These attorneys subsequently withdrew and different attorneys entered their appearances.  The caption identifies Dorsey's current attorneys.

[2] Because the other family members share Grynberg's last name, we will refer to them by their first names.  We mean no disrespect by doing so.

was opened. Understanding and resolving the issues Dorsey raises in this appeal requires some appreciation of this history, beginning with Grynberg's estate plans.

## A. The Estate Plans

¶ 3 Grynberg executed several iterations of his estate plan in the 2010s. His 2013 estate plan provided that, upon his death, his family members would receive significant ownership of his businesses. His 2013 estate plan also provided that Celeste would serve as his estate's personal representative, with Rachel as an alternate.

¶ 4 Grynberg executed a new estate plan in 2014, in which he again designated Celeste as the personal representative but removed Rachel as the alternate and replaced her with a banker and professional trustee.

¶ 5 A few years later, and with the advice and assistance of Dorsey, Grynberg executed a 2018 estate plan, which removed Celeste as personal representative and disinherited two of his children — Rachel and Stephen. (As we will discuss below, the conservatorship court later invalidated the 2018 estate plan.)

## B. The Family Litigation

¶ 6 By 2016, family members had become concerned about Grynberg's cognitive health and its impact on the family's interests in the businesses based on what the family claimed was uncharacteristic and erratic behavior. For example, Grynberg got caught up in various internet scams. Based on these concerns, these family members cut off Grynberg's access to business bank accounts and reduced his titles and roles in the businesses.

¶ 7 In response to these actions, Grynberg sued family members in a Texas court, seeking to revoke their ownership interests and take back control of the businesses. The Texas court dismissed that case on *forum non conveniens* grounds. The family members, some family trusts, and two of the family's companies then sued Grynberg in Arapahoe County District Court, seeking a declaratory judgment to confirm the family members' ownership rights in the businesses. The plaintiffs also accused Grynberg of, among other things, breaches of his fiduciary duties, corporate waste, conversion, and civil theft. Grynberg countersued for, among other things, breach of contract, breach of familial fiduciary duty, and unjust enrichment. The family litigation lasted about three years.

Celeste and the children eventually prevailed in a jury trial and a separate trial to the court in 2019. Dorsey represented Grynberg during the family litigation.[3]

¶ 8    In 2017, while the family litigation was ongoing, Grynberg separately sought a dissolution of his fifty-eight-year marriage with Celeste. Dorsey also represented Grynberg in the dissolution of marriage case.

### C.    The Conservatorship and Probate Cases

¶ 9    In October 2019, Rachel, Stephen, and one of the family corporations petitioned for appointment of a special and permanent conservator for Grynberg in the Arapahoe County District Court. They alleged that Grynberg was suffering from "significant age-related cognitive disorders that impair his judgment and leave him vulnerable to a large number of individuals, including scam artists and lawyers and opportunistic employees — among others," and they sought an order appointing McMinimee as Grynberg's conservator. According to the petition, McMinimee was an

---

[3] In June 2020, a division of this court affirmed the judgment in favor of the plaintiffs in the family litigation. *Grynberg v. Grynberg*, (Colo. App. No. 19CA1288, June 4, 2020) (not published pursuant to C.A.R. 35(e)).

experienced conservator and estate administrator. The court granted the petition and appointed McMinimee as Grynberg's special conservator, finding her appointment "necessary to preserve and apply the property of [Grynberg] for the benefit of [Grynberg]." The court later appointed a guardian ad litem for Grynberg.

¶ 10    In March 2020, the conservatorship court ordered Grynberg to undergo a professional evaluation with Dr. Max Wachtel, a forensic and clinical psychologist. Shortly thereafter, Dorsey filed a motion (with a supporting affidavit) seeking unpaid attorney fees for work it had performed for Grynberg in or in connection with the family litigation.

¶ 11    After discussions with Grynberg and other individuals and reviewing relevant materials, Dr. Wachtel submitted his evaluation to the court in April 2021. He concluded that Grynberg lacked contractual capacity beginning in 2015 and continuing thereafter, was "highly susceptible to undue influence starting in 2015," had diminished capacity to direct legal counsel starting in 2015, had no capacity to direct legal counsel starting in 2019, and wasn't of sound mind when he executed the 2018 estate planning documents.

¶ 12    Based on Dr. Wachtel's report, McMinimee filed a motion in May 2021 asking the conservatorship court to invalidate the 2018 estate plan.  She also asked the court for permission to re-execute the 2013 estate plan.  In that motion, McMinimee said that she had notified all interested persons as required by section 15-14-411, C.R.S. 2025.  Although Dorsey had made a claim for payment of its fees charged in the family litigation, McMinimee hadn't notified Dorsey.

¶ 13    The conservatorship court entered an order on June 9, 2021, invalidating Grynberg's 2018 estate plan and authorizing McMinimee to revoke Grynberg's 2018 estate plan and to re-execute Grynberg's 2013 estate plan (the invalidation order).  In the invalidation order, the court found that McMinimee had properly notified all interested persons.

¶ 14    Dorsey withdrew its request for fees on August 2, 2021, two months after the invalidation order.

¶ 15    Upon Grynberg's death on October 11, 2021, the conservatorship was terminated by operation of law.  § 15-14-431(1), C.R.S. 2025.  A probate case was then opened and the

probate court appointed McMinimee as the special administrator of Grynberg's estate. The probate case apparently remains ongoing.

### D. The Malpractice Case

¶ 16 In September 2021, shortly before Grynberg's death, McMinimee, in her capacity as conservator, filed a complaint in the conservatorship case asserting claims against Dorsey, a Dorsey partner (Gregory S. Tamkin), another law firm, and an attorney with that other law firm for, among other things, breach of fiduciary duty and legal malpractice (the malpractice case). The complaint was premised on allegations that the law firms and attorneys had concealed Grynberg's declining physical and mental health and had taken advantage of Grynberg's diminished capacity by running up unnecessary attorney fees in the family litigation.

¶ 17 Shortly after Grynberg passed away, Dorsey and Tamkin responded to McMinimee's complaint with a motion to dismiss for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1), asserting that the probate court didn't have subject matter jurisdiction over the claims. The probate court granted that motion, dismissing the claims without prejudice.

¶ 18    McMinimee refiled the complaint as a new civil action in Arapahoe County District Court.  The malpractice case remains ongoing.

## II.    The Motions Giving Rise to this Appeal

¶ 19    On August 22, 2024, Dorsey filed three motions with the court in the closed conservatorship case: (1) a motion for the judge to recuse herself; (2) a motion to intervene under C.R.C.P. 24; and (3) a motion for relief from a judicial order (specifically the invalidation order) under C.R.C.P. 60(b).  The court denied all three motions, the latter two in a thorough written order.

## III.    Discussion

¶ 20    On appeal, Dorsey contends that the conservatorship court abused its discretion by denying its motion to intervene under C.R.C.P. 24 and its motion to set aside the invalidation order under C.R.C.P. 60(b).  (Dorsey doesn't challenge the court's order denying its motion to recuse.)  We disagree with Dorsey as to both orders.

### A.    C.R.C.P. 24 Motion to Intervene

¶ 21    The conservatorship court denied Dorsey's motion to intervene as untimely.  After thoroughly recounting the history of the family litigation, the conservatorship case, and the malpractice case, the

8

court ruled that Dorsey hadn't provided any legally viable justification for waiting more than three years to attempt to set aside the invalidation order, which was Dorsey's stated purpose for seeking to intervene in the conservatorship case. The court also concluded that "there is a need for finality in this conservatorship proceeding" and "[t]o allow intervention now . . . would also disrupt the orderly administration of Mr. Grynberg's estate."

¶ 22    Dorsey argues on appeal that the court erred by denying its motion to intervene as untimely because there is no time limit for seeking to intervene under C.R.C.P. 24 when a party seeks to do so for the purpose of asking the court to set aside an order under C.R.C.P. 60(b)(3) as void.[4]  This argument is meritless.

---

[4] Dorsey's C.R.C.P. 60(b) motion also sought relief under subsection (b)(5) of the rule — "any other reason justifying relief from the operation of the judgment."  But perhaps recognizing that a motion under that subsection must be filed "within a reasonable time," C.R.C.P. 60(b); *Se. Colo. Water Conservancy Dist. v. O'Neill*, 817 P.2d 500, 505 (Colo. 1991), Dorsey limits its argument on appeal to subsection (b)(3).  *See Burton v. Colo. Access*, 2018 CO 11, ¶ 35 (seeming to hold that a C.R.C.P. 60(b) motion challenging a judgment as void under subsection (b)(3) can be filed at any time). *But see Coney Island Auto Parts Unlimited, Inc. v. Burton*, 607 U.S. ___, ___, 146 S. Ct. 579, 584-85 (2026) (holding that the requirement that motions for relief from judgment under Fed. R. Civ. P. 60(b) be made within a reasonable time applies to motions alleging that a judgment is void).

### 1. Applicable Law and Standard of Review

¶ 23    "C.R.C.P. 24 requires that an applicant seek 'timely intervention' whether the intervention be as of right under C.R.C.P. 24(a), or permissive under C.R.C.P. 24(b)." *Law Offs. of Andrew L. Quiat, P.C. v. Ellithorpe*, 917 P.2d 300, 303 (Colo. App. 1995); *see* C.R.C.P. 24(a) (a person is entitled to intervene "[u]pon timely application" if certain requirements are met); C.R.C.P. 24(b) (a court may allow a person to intervene "[u]pon timely application" under specified circumstances).  "And, when intervention is sought, the issue of timeliness is a threshold question." *Law Offs. of Andrew L. Quiat, P.C.*, 917 P.2d at 303 (citing *Diamond Lumber, Inc. v. H.C.M.C., Ltd.*, 746 P.2d 76, 78 (Colo. App. 1987)); *accord Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) ("[T]imeliness is a 'cardinal consideration' of whether to permit intervention . . . ." (quoting *Brink v. DaLesio*, 667 F.2d 420, 428 (4th Cir. 1981))).

¶ 24    When determining whether a motion to intervene is timely, the court "must weigh the lapse of time in light of all the circumstances of the case, including whether the applicant was in a position to seek intervention at an earlier stage in the case." *Law Offs. of*

*Andrew L. Quiat, P.C.*, 917 P.2d at 303.  The court may also consider other circumstances including "how long the motion to intervene was delayed, whether the existing parties were prejudiced by that delay, whether the movant will be prejudiced if the motion is denied, and unusual circumstances militating either for or against a finding of timeliness."  *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 181-82 (2d Cir. 2001) (applying Fed. R. Civ. P. 24); *see also* C.R.C.P. 24(b) ("In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.").  "There is considerable reluctance on the part of courts to allow intervention after the action has gone to judgment and a strong showing will be required of the applicant."  *Houston Gen. Ins. Co.*, 193 F.3d at 840 (quoting 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1916, at 444-45 (2d ed. 1986)).

¶ 25    We review a district court's denial of a motion to intervene as untimely for an abuse of discretion.  *See Feigin v. Alexa Grp., Ltd.*, 19 P.3d 23, 27 n.6 (Colo. 2001); *Law Offs. of Andrew L. Quiat, P.C.*, 917 P.2d at 303; *Butler*, 250 F.3d at 182; *Houston Gen. Ins. Co.*,

193 F.3d at 839. "A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law." *State ex rel. Weiser v. City of Aurora*, 2023 COA 52, ¶ 49 (quoting *AA Wholesale Storage, LLC v. Swinyard*, 2021 COA 46, ¶ 32).

### 2.    Analysis

¶ 26    The district court found, with abundant record support, that Dorsey knew of the invalidation order long before it moved to intervene, could have sought intervention at an earlier stage in the case, and hadn't given the court any legitimate reason for its failure to do so. *See Law Offs. of Andrew L. Quiat, P.C.*, 917 P.2d at 303; *cf. Diamond Lumber, Inc.*, 746 P.2d at 78 (intervenors who move promptly may timely do so despite a late "point of progress in the lawsuit"). The district court recounted at least thirty-three actions Dorsey had taken in the conservatorship and probate cases, ranging from June 2020 to May 2024. It noted that "Dorsey was actively participating in the case before, during, and since" the conservatorship court's order invalidating the 2018 estate plan. Yet Dorsey had waited over three years to challenge the invalidation order despite that participation. And Dorsey filed its motion to

12

intervene more than two years after the conservatorship court had closed the case. Accordingly, the court concluded that reopening the case to potentially set aside the invalidation order would prejudice McMinimee and Grynberg's estate's beneficiaries. *See Spickard v. Civ. Serv. Comm'n*, 523 P.2d 149, 151 (Colo. App. 1974) ("Motions for intervention filed after judgment or after a decision is rendered on appeal are viewed with disfavor and the moving party has a heavy burden to show facts or circumstances which justify intervention at that late date."); *Houston Gen. Ins. Co.*, 193 F.3d at 840 (requiring a stronger showing by a movant when there has been a final judgment in a case).

¶ 27    On this record, we conclude that there is no basis for concluding that the conservatorship court abused its discretion.

¶ 28    Tellingly, Dorsey remained conspicuously silent in the conservatorship case on when it believed it learned of the invalidation order (as the conservatorship court noted in its order). McMinimee points to evidence, which Dorsey doesn't challenge, that Dorsey learned of the order, at the latest, on January 27, 2022, two and a half years before it moved to intervene. In its reply brief on appeal, Dorsey finally takes something of a position on the issue,

saying that it "does not claim ignorance of the Invalidation Order throughout 2022."

¶ 29 And on appeal, Dorsey doesn't challenge the court's findings or analysis. Instead, Dorsey argues only that because it can file a motion to challenge a void judgment under C.R.C.P. 60(b)(3) at any time, there is no time limit for moving to intervene under C.R.C.P. 24 if the purpose of intervening is to be able to seek relief under C.R.C.P. 60(b)(3). Dorsey doesn't cite any authority either holding or implying as much. Apparently, Dorsey hasn't found any authority from any jurisdiction requiring a court to disregard the plain language of C.R.C.P. 24 in these circumstances. Neither have we.

¶ 30 Again citing no authority on point, Dorsey argues nevertheless that denying it intervention would violate its right to due process because it must be allowed to challenge the invalidation order as void. But even if a motion to set aside an order as void under C.R.C.P. 60(b)(3) may be filed by a "party" at any time, *see Burton v. Colo. Access*, 2018 CO 11, ¶ 35; *Don J. Best Tr. v. Cherry Creek Nat'l Bank*, 792 P.2d 302, 304 (Colo. App. 1990), it doesn't follow that a *nonparty* can intervene at any time to seek such relief. Dorsey fails

14

to develop any argument in its opening brief that, as a nonparty, its rights were affected by the invalidation order in a way or to an extent violating its right to due process. Indeed, its opening brief doesn't even say precisely how it was prejudiced by the invalidation order. In its reply brief, Dorsey says it was prejudiced because findings in the invalidation order are "prejudicial to Dorsey regarding Mr. Grynberg's mental capacity" and resulted in appointment of "a hostile administrator aligned with family members who were Mr. Grynberg's litigation adversaries, and who is now pursuing malpractice claims" against Dorsey. But Dorsey doesn't identify a liberty or property interest implicated by those consequences — and absent such a right, due process doesn't come into play. *See Whatley v. Summit Cnty. Bd. of Cnty. Comm'rs*, 77 P.3d 793, 798 (Colo. App. 2003); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) ("The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"); *Cherry Creek Aviation, Inc. v. City of Steamboat Springs*, 958 P.2d 515, 523 (Colo. App. 1998) ("The requirements of procedural due process apply only to the deprivation of a liberty or property interest protected by the

Fourteenth Amendment.").[5]  Thus, its due process argument necessarily fails.

## B.    C.R.C.P. 60(b) Motion

¶ 31    Dorsey also contends that the district court erred by denying its motion to set aside the invalidation order under C.R.C.P. 60(b) because it was already a party to the conservatorship case and therefore didn't need to intervene to file such a motion.  But Dorsey didn't preserve this argument for appellate review.  And because the court correctly denied Dorsey's motion to intervene, Dorsey could not file a motion under C.R.C.P. 60(b).

### 1.    Applicable Law and Standard of Review

¶ 32    "C.R.C.P. 60(b) provides that a 'court may relieve *a party or his legal representative* from a final judgment, order, or proceeding' for several enumerated reasons."  *Law Offs. of Andrew L. Quiat, P.C.*, 917 P.2d at 304 (quoting C.R.C.P. 60(b)).  As relevant to this case,

---

[5] We observe that Dorsey is free to contest the issue of Grynberg's mental capacity in the malpractice case notwithstanding the conservatorship court's findings in 2021, and Dorsey doesn't claim otherwise.  And we fail to see how Dorsey could have a liberty or property interest in ensuring that the conservator/administrator isn't someone who will sue it for malpractice.

one of those enumerated reasons is that a judgment is void. C.R.C.P. 60(b)(3).

¶ 33 C.R.C.P. 60(b) "allows only a party or one who is in privity with a party to move under the rule, and thus, others lack standing to make such a motion." *Law Offs. of Andrew L. Quiat, P.C.*, 917 P.2d at 304 (citing 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2865 (1973)).

¶ 34 "We review the district court's denial of a Rule 60(b) motion for an abuse of discretion." *Taylor v. HCA-HealthONE LLC*, 2018 COA 29, ¶ 30 (citing *Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 314 (Colo. 2010)).

### 2. Analysis

¶ 35 Dorsey argues, for the first time on appeal, that it wasn't required to intervene in the conservatorship case under C.R.C.P. 24 because it was already a party in that case. But we don't address issues raised for the first time on appeal. *Gestner v. Gestner*, 2024 COA 55, ¶ 18.

¶ 36 Dorsey argues in its reply brief that the issue is preserved because the district court ruled on "the purported untimeliness of intervention." But the court's ruling didn't address whether Dorsey

could seek relief under C.R.C.P. 60(b) because it was already a party — an issue Dorsey never raised. And to preserve an issue for appeal, a party has to bring the issue to the lower court's attention so that the court has an opportunity to rule on it. *See Am. Fam. Mut. Ins. Co. v. DeWitt*, 218 P.3d 318, 326 (Colo. 2009); *Est. of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992). Because Dorsey failed to do so, we won't consider this argument. *Melat, Pressman & Higbie, L.L.P. v. Hannon L. Firm, L.L.C.*, 2012 CO 61, ¶ 18.[6]

¶ 37    Moreover, Dorsey moved to intervene, an act that would have been pointless if Dorsey was already a party to the case.[7] And in its motion to intervene, Dorsey expressly acknowledged that "[t]he only existing party in this matter is McMinimee." Dorsey also said at

---

[6] In its reply brief, Dorsey tries to change horses, asserting that it was a "former party" when it filed its Rule 60(b) motion and therefore didn't need to intervene. The argument in its opening brief was that it was presently a party when it filed its Rule 60(b) motion. Dorsey didn't make its "former party" argument in the district court, and therefore that argument, too, isn't preserved. Also, we don't address arguments raised for the first time in a reply brief. *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 995 n.13 (Colo. App. 2011).

[7] Dorsey doesn't explain why it filed a motion to intervene if it was already a party.

least three times in its motion to intervene and reply in support of that motion that it was moving to intervene so that it could pursue a motion under C.R.C.P. 60(b).[8]  These statements are unequivocal judicial admissions that Dorsey wasn't then a party in the case. *See Calvert v. Mayberry*, 2019 CO 23, ¶ 18 ("A judicial admission is a formal, deliberate declaration which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." (quoting *Kempter v. Hurd*, 713 P.2d 1274, 1279 (Colo. 1986))); *accord D.R. Horton, Inc.-Denv. v. Bischof & Coffman Constr., LLC*, 217 P.3d 1262, 1276 (Colo. App. 2009).  Such judicial admissions are binding on those who make them.  *People ex rel. State Eng'r v. Sease*, 2018 CO 91, ¶ 28; *Salazar v. Am. Sterilizer Co.*, 5 P.3d 357, 365 (Colo. App. 2000).  And judicial admissions "continue to have

---

[8] Page 4 of the motion states, "In sum, Dorsey is an interested party with the right to intervene in this case to pursue relief under C.R.C.P. 60."  Page 1 of the reply states, "Dorsey filed the Motion to Intervene for two purposes: . . . (2) to litigate a motion pursuant to C.R.C.P. 60(b) for relief from" the invalidation order.  And Page 8 of the reply states, "[T]his motion seeking routine intervention was filed contemporaneously [with the Rule 60 motion] so that Dorsey may be heard on the Rule 60 motion."

effect for a subsequent part of the same proceedings." *Kempter*, 713 P.2d at 1279.[9]

¶ 38    Moreover, Dorsey's position on appeal ignores an important limitation on seeking relief under C.R.C.P. 60(b).  Under the plain language of C.R.C.P. 60(b), only a "party or his legal representative" may seek to set aside a judgment as void under C.R.C.P. 60(b)(3). Thus, if a movant like Dorsey isn't a party to the case in which the judgment that the movant seeks to challenge was entered, it is irrelevant whether there is a time limit for filing a motion under C.R.C.P. 60(b)(3).  To become a party, the movant must comply with C.R.C.P. 24.  And that rule has a "timely application" requirement that acts independently of C.R.C.P. 60.  So if a court denies an applicant's motion to intervene based on untimeliness, it follows that the applicant's motion under C.R.C.P. 60(b) must likewise be denied because the applicant isn't a party to the case.  *See Law*

---

[9] Dorsey's representations on this point also implicate the doctrine of judicial estoppel.  Dorsey urged the conservatorship court to treat it as a nonparty seeking intervention, not only by moving to intervene but by representing that McMinimee was the only party in the case.  Dorsey can't now take a contrary position on appeal.  *See Roberts v. Am. Fam. Mut. Ins. Co.*, 144 P.3d 546, 549-50 (Colo. 2006); *People in Interest of M.B.*, 2020 COA 13, ¶ 48.

*Offs. of Andrew L. Quiat, P.C.*, 917 P.2d at 303-04 (where the district court correctly denied a law firm's motion to intervene under C.R.C.P. 24 as untimely, it didn't err by denying the law firm's C.R.C.P. 60(b) motion because the law firm didn't become a party to the case); *see also Ericsson, Inc. v. InterDigital Commc'ns Corp.*, 418 F.3d 1217, 1221-24 (Fed. Cir. 2005) (holding that a nonparty couldn't challenge an order as a "mistake" under Fed. R. Civ. P. 60(b)(1) because its motion to intervene under Fed. R. Civ. P. 24 had been properly denied and "[t]he plain language of Rule 60(b) only allows relief to be given to 'a party' to the litigation"); *Houston Gen. Ins. Co.*, 193 F.3d at 840 (concluding that, because the appellant didn't timely move to intervene under Fed. R. Civ. P. 24, the court didn't have to address the appellant's request to set aside an order under Fed. R. Civ. P. 60(b)).[10]

---

[10] It is questionable whether the invalidation order can even be set aside under C.R.C.P. 60(b). That rule applies only to a "*final* judgment, order, or proceeding." (Emphasis added.) It doesn't apply to interlocutory orders. *See, e.g.*, *Mintz v. Caterpillar Inc.*, 788 F.3d 673, 679 (7th Cir. 2015) (applying the virtually identical federal rule); *Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) (same); *see also Scott v. Scott*, 136 P.3d 892, 896-97 (Colo. 2006) (discussing finality in the context of estate proceedings). But given our disposition of this appeal, we don't need to resolve that issue.

¶ 39    Because the district court correctly denied Dorsey's motion to intervene — that is, its motion to become a party — it follows that the court didn't abuse its discretion by denying Dorsey's C.R.C.P. 60(b) motion.

IV.    McMinimee's Request for Appellate Attorney Fees and Double Costs

¶ 40    McMinimee seeks an award of her appellate fees and double costs under C.A.R. 38(b) and section 13-17-102, C.R.S. 2025, arguing that Dorsey's appeal is frivolous.

¶ 41    We agree with McMinimee that Dorsey's appeal is substantially frivolous.  *See* §§ 13-17-101.5(1), -102(2), (4), C.R.S. 2025.  As discussed, Dorsey's argument with respect to its motion to intervene is unsupported by any legal authority and contrary to the plain language of C.R.C.P. 24.  And Dorsey failed to preserve its only appellate argument concerning its C.R.C.P. 60(b) motion and in raising that argument took a position contrary to that which it took in the conservatorship court.

¶ 42    Therefore, McMinimee is entitled to an award of her reasonable attorney fees incurred on appeal.  Dorsey and its

original attorneys in this appeal are jointly and severally liable for those fees.

## V. Disposition

¶ 43    We affirm the conservatorship court's orders and remand the case to the conservatorship court to determine McMinimee's reasonable appellate attorney fees.  We also award McMinimee double costs under C.A.R. 38(b).

JUDGE MEIRINK and JUDGE TAUBMAN concur.